**Elba ORTIZ, Plaintiff,**

v.

**Theodore ENGELBRECHT et al., Defendants.**

Civ. No. 695–71.

United States District Court, D. New Jersey.

Dec. 12, 1973.

Theodore A. Gardner, Hudson County Legal Services, Jersey City, for tenant Ortiz.

Michael A. Russoniello, Asst. Hudson County Counsel, Jersey City, for defendant Constable Nobile.

No appearance for landlord Engelbrecht.

ON REHEARING OF MOTION FOR CLASS ACTION CERTIFICATION AND FOR CONVENING THREE-JUDGE COURT

BIUNNO, District Judge.

### SUMMARY

Tenant was served in state court action for summary dispossession based on non-payment of rent, by posting process (summon and complaint) on the door of the premises. Default judgment was entered and a warrant of possession issued. Tenant was informed of this by mail and was asked to surrender possession by a short date. Tenant then sued landlord and court officer in federal court, claiming the statute which authorized posted service was unconstitutional as lacking due process, seeking injunction against its enforcement and declaratory judgment. Class action status was sought as well as convening of a three-judge district court. At initial hearing before a single district judge, it appeared that landlord had abandoned the state proceeding, and the complaint was dismissed. On appeal, this disposition was reversed and the case was remanded. 474 F.2d 977 (3d Cir. 1973).

On second hearing by district judge, it was ruled that:

1. Tenant had meanwhile moved out and whereabouts were unknown, rendering case moot as to her.

2. Issues raised were of sufficient public importance to retain and decide the case despite mootness of tenant's case.

3. Tenant's disappearance precluded her serving as a representative party who would fairly and adequately protect the interests of the class.

4. The constitutional question is insubstantial in view of the very strict requirements of state law before extraordinary service is approved, and in view of the provisional and non-binding nature of the proceeding, all as reflected not only in the challenged statute but also in the rules of court and reported decisions on reopening of default judgments, on res judicata and estoppel by judgment, and on right to relitigate issue of possession anew with recovery of triple damages.

5. A declaratory judgment always provides a remedy in constitutional issue cases by giving a definite answer to previously uncertain questions, regardless of result.

6. When threshold questions of insubstantiality of constitutional issue and appropriateness of injunction are not met, convening of three-judge court is not justified.

7. Failure to satisfy requirements for three-judge court does not always justify dismissal of action when jurisdiction appears under 28 U.S.C. sec. 1343, at least for declaratory judgment relief, whether demanded or not, under F.R.Civ.P. 54(c).

8. Anonymous statistical data supposedly studying tenant dispossess actions in a single county court for a limited period are not sufficient to raise a substantial question when the figures defy independent analysis and contain no information related to the constitutional issue raised.

9. State courts should be afforded opportunity to construe local statutes and court rules, and to clarify court rules if need be when state courts have power to adopt rules superseding statutes.

10. Motions for class action certification and for convening three-judge court denied. Case retained, despite mootness, for declaratory judgment itself.

## OPINION OF THE COURT

Plaintiff sues to challenge the constitutionality of the New Jersey statute authorizing service of process, in a landlord and tenant summary dispossess proceeding, by posting the papers on the door of the occupied premises.

Tenant had been named as defendant in a proceeding by landlord grounded on non-payment of rent. Service was by posting on the door. On the trial date, tenant did not appear and judgment for possession was entered by default.

A warrant for possession issued, and a court officer wrote tenant that he had the warrant and set a short date for surrender of possession. Tenant says this was the first information received that a suit had been filed.

Tenant did not apply to the County District Court to reopen the default judgment so that a defense on the merits might be made. Instead, tenant filed this suit in the U. S. District Court claiming that the posting provision is unconstitutional.

Suit here was claimed to be as a class action, with the single tenant as the representative of the class. A preliminary and final injunction was also sought, as well as declaratory relief.

The initial hearing was before Judge Garth. At that hearing it appeared that the landlord had decided to abandon further processing of the summary dispossess proceeding, and in view of this, Judge Garth concluded that there was no basis for an injunction, and ordered the suit dismissed.

An appeal was taken. The clerk's file discloses that no transcript of the hearing before Judge Garth had been ordered and furnished, with the result that the Court of Appeals was provided with an inadequate record. On the basis of what was before it, the Court of Appeals reversed and remanded for further exploration and findings. 474 F.2d 977 (3d. Cir. 1973) A further hearing was held, and this opinion follows it.

■ At that hearing, it was disclosed to the court that the tenant has since vacated the premises and that her whereabouts are unknown to her attorney. The fact that she has vacated the premises renders the issue moot as to tenant; but the importance of the question justifies the exercise of the court's discretion to consider it despite the fact that it is moot.

■ The disappearance of the tenant and the termination of contact with her attorney obviously requires the court to conclude that tenant cannot be expected to serve the function of a representative party that will fairly and adequately protect the interests of the class under Fed.R.Civ.P. 23(a)(4). Like Sandburg's "Fog", tenant came into court on little cat feet, sat looking over district and circuit, and then moved on.

Two major difficulties of another nature are also presented. One is that tenant made no attempt to submit evidence in this action to establish what had transpired in the county district court. The second is that it was represented to the court that the challenged statute had never been construed by the New Jersey courts.

■ The first difficulty is insuperable. The judicial function is to adjudicate disputes; it is not investigatory in nature, nor does the court have any investigative staff. It is the obligation of parties who assert the existence of a dispute to gather and present the evidence from which the facts may be ascertained. They are provided with ample procedures for this purpose, not the least of which are those found in the rules dealing with discovery.

In respect to the admissibility of evidence, Fed.R.Civ.P. 43(a) provides a generous avenue for proof. It requires the court to receive evidence admissible under either federal or state law, the guide being that the statute or rule which favors the reception of the evidence governs. It also directs that the evidence be presented by the most convenient method prescribed.

N.J. Evidence Rule 63(17) authorizes the admission of copies of official records. The authentication requirements of N.J. Evidence Rule 68(1) and (4) are about as simple and informal as

they can be. Yet, the court has before it nothing by way of reasonably reliable evidence as may be embodied in the New Jersey court records in regard to the dispossess proceeding.

The absence of any proof of the court records means that the court is asked to declare a statutory provision unconstitutional without any factual context. This is what Mr. Justice Holmes once called "churning the void to make cheese."

As the statute is phrased, service by posting is a form of extraordinary service authorized as a last resort when other methods have failed. Without the record of the New Jersey court, it is impossible to say whether the court officer did in fact attempt and exhaust the preferred methods of service with failure before making service by posting on the door.

At the second hearing the court put the question to tenant's attorney: what method of service should be authorized for summary dispossess proceedings in a case where the rent has not been paid and ordinary service cannot be made, as in a case where the tenant has simply walked away, leaving the premises locked. The response given was that in such cases the landlord could simply retake possession, but that answer is quite inadequate because without the warrant of some authorized process, such a reentry may be unlawful and expose the landlord to one sanction or another.

The facts may be ambiguous. A tenant may have gone off on a long trip and may have overlooked making arrangements for the rent. A landlord who entered under those facts without the warrant of a court might be considerably embarrassed.

The other suggestion was that service of last resort would be constitutional if made by mail rather than by posting on the door. Aside from the fact that the mailing of a notice of trial is one of the steps called for under New Jersey procedures, it is common knowledge that mail handling no longer enjoys the reputation for reliability that it once had. It is said that in England, the Royal Post still delivers in the morning mail all letters posted before 6 P.M. the day before. But this court, whose chambers are within the U. S. Post Office Building in Newark, has experienced a three day delay in receiving mail from the General Services Administration Store across the street, and a six day delay in receiving mail from a major Newark office building no more than eight city blocks away. These are business days.

Turning to the statute itself, the court has found a number of significant New Jersey decisions which construe the extraordinary service of process. Not only that, but the fact is that in New Jersey today the composite pattern of the applicable law is found not only in the statutes in force but in the rules of court.

The reason for this is that with the taking effect of the judicial article of N.J.Const.1947, many provisions having to do with practice and procedure that were commonly found in statutes were removed from the statutes and placed in the rules of court. Since many procedural statutes have been repealed in this enterprise, the current editions of statutory materials from which decisional annotations are commonly searched no longer have the hooks or handles for clustering the related court decisions.

Without attempting to review the entire history of New Jersey's statutory pattern from colonial days, it is sufficient to observe that in this century there were two major undertakings for the compilation or revision of the statutory law. One was the Compiled Statutes of 1910, later updated with a miscellany of supplements (the pocket part device had not yet taken hold), and the other was the 1937 Revised Statutes.

The 1937 Revision had been authorized in 1925, when the Compiled Statutes was a mere 15 years old. Since 1937, some 36 or more years have passed

without a comprehensive revision. Instead the custom has been to revise specific titles as the need arose.

Title 2 of the 1937 Revised Statutes dealt with the "Administration of Civil and Criminal Justice", other than matters dealing with Wills and the Administration of Estates, which was placed in Title 3. Title 2 attempted to draw together all of the statutes on practice, procedure and evidence, as well as the structure, composition and jurisdiction, of the multifarious courts then in existence, and did it tolerably well. But the 1947 Constitution drastically revised and, revamped the structure and functions of the judicial branch, and it took a considerable effort from election day of 1947 to January 1, 1952 before Title 2 was revised into the present Title 2A to reflect the changes made necessary by the constitutional restructuring.

As noted above, many statutes formerly found in Title 2 vanished because their scope had been covered by rules of court that had taken effect back on September 15, 1948. The result is that any kind of serious research on a statutory provision in the current Title 2A, which is suspected of having a long history (as is the case with the posting provision before the court) requires that an investigation be made of the "obsolete" volumes of Title 2 of the 1937 Revised Statutes, and perhaps of the 1910 Compiled Statutes, and even of the 1877 Revision and other works. It was through such a research process conducted by the Court, that a line of decisions pertinent to the question were found without any strenuous effort.

■■ With this background, it is possible to turn to the questions to be decided on the present motion. As was observed in Majuri v. United States, 431 F.2d 469 (C.A.3d, 1970), a motion for the convening of a three-judge district court calls upon the single judge who hears the motion to perform more than a ministerial act. Two threshold questions are involved. One is whether the

constitutional issue raised is at least sufficiently substantial as to be beyond the province of a single judge. The second is whether the facts advanced on the motion are sufficient to invoke the extraordinary equitable remedy of injunction. Findings on these threshold questions are not only within the province, but are a firmly established duty of a single district judge. Both call for a judicial determination and for the exercise of sophisticated judgment.

■■ It should be emphasized, particularly where a state statute is involved, that these questions do not necessarily control the question whether the complaint should be allowed to stand for trial and final judgment, or whether it should be dismissed. That question, particularly where one form of remedy to which the plaintiff may be entitled [whether demanded in the complaint or not, under Fed.R.Civ.Proc. 54(c)] is a declaratory judgment, is an entirely different one. It may well be appropriate in a given case to deny a motion to convene a three-judge court for failure to overcome the threshold requirements; yet it may be improper to dismiss if declaratory relief would be suitable, since that relief is available from a single judge where the suit, as here, challenges a state statute and jurisdiction appears under 28 U.S.C. sec. 1343. *See Majuri, supra,* at p. 474.

■ Thus, the first threshold question to be considered (it was not dealt with by Judge Garth's prior hearing and ruling) relates to the substantiality of the constitutional issue. This requires an analysis of the New Jersey statutes, court rules (which are statutory in nature) in pari materia and the decisional law of the State construing and applying them. At the outset it must be observed that matters of due process involving service must be taken in the setting of the type of proceeding and kind of judgment that is involved. Service that may be appropriate for an In Rem Tax Foreclosure (see N.J. Court R. 4:64–7), or,

for an action to quiet title against unknown owners or claimants of real property (see N.J. Court R. 4:28–4a), may be quite improper if a money judgment in personam is to be entered. The same would be true of service in a condemnation proceeding (N.J. Court R. 4:73–3), or in an action for attachment or sequestration (N.J. Court R. 4:60–1 et seq.).

■ This well-known relationship requires that the court take into account the nature of a summary dispossess proceeding in the county district courts of New Jersey. It is an action of exceedingly narrow scope, culminating in a judgment of very limited effect. It may be used only for specified statutory grounds. The only judgment that can be entered is one placing the possession of the real estate in the landlord. No money judgment may be entered against the tenant. The judgment, even if entered after full trial on the merits, is not res judicata between the parties on the very issue tried, the right to have possession. If the proceedings are in any way unlawful, the landlord remains liable to the tenant. N.J.S. 2A:18–59. A tenant unlawfully evicted may recover triple damages under N.J.S. 2A:39–8, see Zankman v. Tireno Towers, 121 N.J. Super. 346, 297 A.2d 23 (County, 1972).

As far back as 1820, the New Jersey courts held that service of summons in a suit for forcible entry and detainer could not support a default judgment where the return stated that the writ was served by "leaving a copy fastened to the door of the house *which is said* to be in possession of defendant" (emphasis added). Miller v. Doolittle, 5 N.J.L. 993 (S.Ct.1820).

In 1828, the Chief Justice declined to disapprove service of a declaration in ejectment made by the lessor of the corporate tenant instead of by an officer or other indifferent person because, among other considerations, "great liberality is exercised in opening judgments by default in ejectment and admitting the tenant to defend the possession." He also ruled that an affidavit showing service on one Vroom, "said to be one of the directors of the within named company", was insufficient proof to support a default judgment. The phrase *"said to be"* was considered more equivocal than the strictness of the rules allows. It could mean "commonly reputed to be", or it could mean that some utterly uninformed person said to him who was attempting to serve, that Vroom was a director. Finally, the Chief Justice explained the distinction between regular or ordinary service, "when the declaration is served on the tenant himself, or on his wife or some person of his family on the premises", and irregular or extraordinary service, "when the former method is not practicable." In such cases, he observed, judgment is taken at the peril of the plaintiff if he did not first obtain a rule to show cause why the mode of service should not be deemed good, this rule to be served in such manner as the court shall direct. Den v. Fen, 10 N.J.L. 237 (S.Ct.1828).

In 1836, a default judgment for $30. was set aside because the constable's return failed to say that the defendant was "not found", and that he read the summons to a "white" person (when the statute spoke of a "free" person) over 14 and left it with her at "the" place of abode (when the statute said *"his"* place of abode). The discussion of the ambiguities inherent in the return is illuminating. Polhemus v. Perkins, 15 N.J.L. 435 (S.Ct.1836).

Another illuminating opinion is one by Chief Justice Beasley in 1866. In that case a motion to quash a summons in ejectment for defective service and return was denied. Yet, while allowing the judgment for possession to stand, he ruled that it could not include costs, and that in a later action for mesne profits by the defendant against the plaintiff, the question of possession would be an open one to be settled by the jury. Der-

rickson v. White, 32 N.J.L. 137 (S.Ct. 1866).

These decisions, of course, are indicative of New Jersey's heritage as a common law jurisdiction, including the Magna Charta.N.J.Const.1776, Art. XXII declared that the common law of England, as well as so much of the statute law as had been practiced in the colony, "shall still remain in force" until altered by a future law of the legislature. Similar provisions were included in N.J.Const. 1844, Art. X, par. 1, and in N.J.Const. 1947, Art. XI, sec. 1, par. 3.

■■■ The law providing for summary dispossess proceedings in landlord and tenant matters, which is the subject of this case, is entirely statutory, is in derogation of the common law, and strict compliance with the statutory terms is an indispensable prerequisite to jurisdiction of the court. Weller v. Kelly, 136 N.J.L. 281, 55 A.2d 55 (S.Ct.1947); Arnheiter v. McAghon, 96 N.J.L. 70, 114 A. 752 (S.Ct.1921). At common law, the landlord's sole method of obtaining possession from a defaulting or holdover tenant was by ejectment. Schlesinger v. Brown, 116 N.J.Super. 500, 282 A.2d 790 (D.Ct.1971). And, where there is not a landlord and tenant relationship, the summary dispossess statute may not be used; the common law remedy of ejectment is still the only remedy. Cahayla v. Saikevich, 119 N.J.Super. 116, 290 A. 2d 311 (D.Ct.1972).

It would be an excessive undertaking to attempt, for the purpose of this motion, a detailed review of the manner in which matters of practice and procedure were embodied in the N.J. Court Rules effective September 15, 1948 (pursuant to N.J.Const.1947, Art. 6, sec. 2, par. 3) and which superseded existing statutes under the doctrine of Winberry v. Salisbury, 5 N.J.Super. 30, 68 A.2d 332 (App.1949), aff'd 5 N.J. 240, 74 A.2d 406 (1950), cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950). Nor would it be feasible now to trace the statutory provisions not reenacted with the adoption of Title 2A of the New Jersey Statutes, effective January 1, 1952, or the many changes in the rules of court from 1948, through the 1953 and later revisions.

Suffice it to say that for the greater part of its history the details and requirements of the practice and procedure applicable to summary dispossess actions were embodied in the statute. This was true as well for matters of practice and procedure at law (e. g., the Practice Act of 1912, the Attachment Act of 1901) and in equity (e. g., the Chancery Act of 1874). For that period, which goes back to the enactment of P.L. 1847, p. 142, the statute called for starting the proceeding with the filing of an affidavit, in which all the facts essential to the jurisdiction and the remedy had to be set out precisely and unambiguously. This affidavit, which was a form of proof or evidence, was required to be served along with process specifying the return day on which the case was to be heard, in the manner directed by the statute. If there were a default, the existence of the sworn proof was sufficient to support the entry of judgment for possession. See N.J.R.S. 2:32–271, repealed.

But it was always the law that the statute was construed as establishing merely a procedure which was of a provisional and summary nature, by which for the time being it should be settled as between the landlord and the tenant who should have the immediate possession of the premises in dispute. The decision would not estop the parties in any subsequent investigation to deny or disprove the facts upon which that decision was based. McWilliams v. King, 32 N.J.L. 21 (S.Ct.1866).

■■■ The judgment could, of course, be set up as a shield by the officers who executed it, but not by the landlord. He secured removal of the tenant at the peril of a different finding in a later action for damages by the tenant. The judgment is not a determination of the

ultimate right; it is a mere legal sanction for the issuance of a warrant justifying a duly constituted officer in removing the tenant and putting the landlord in possession. Galka v. Tide Water, etc., Co., 133 N.J.Eq. 137, 30 A.2d 881 (Ch.1943).

It lacks the qualities of res judicata and of estoppel by judgment. Wallworth v. Johnson, 25 N.J.Misc. 449, 55 A.2d 305 (S.Ct.1947); Davidson v. Burstein, 10 N.J.Super. 91, 76 A.2d 715 (App.1950).

In this respect, the summary dispossess proceeding is essentially the same in nature as the taking and delivery of goods and chattels to a plaintiff under a writ of replevin. See N.J.S. 2A:59–1 et seq. Under the replevin statute, the Sheriff takes the goods and delivers them to the plaintiff. If defendant (or any other claimant) so chooses, he may have them right back, while the dispute over the right to possession of the goods continues. To support the delivery on the writ, the Sheriff must first have a bond from plaintiff; to support redelivery to defendant, he must have a bond from the defendant.

The requirements for bonds in replevin and re-replevin are naturally suited to the subject matter. Goods and chattels are easily transported, and the giving of bond assures the party put out of possession that he will be made whole if he ultimately prevails.

But in the case of real estate, which is not movable, it is obvious that the legislature's use of a different pattern recognized that the lands themselves would always be there to satisfy the tenant's claim on an ultimate decision in his favor in a plenary action. In the case of a dispossess for non-payment of rent, the legislature did provide for the tenant to retain possession upon paying the rent into court at any time before the expiration of the 3-day waiting period during which warrant for possession may not issue. N.J.S. 2A:18–57. And see Academy Spires, Inc. v. Jones, 108 N.J.Super. 395, 261 A.2d 413 (Law, 1970). In cases where the grounds are other than non-payment of rent (e. g., expiration of term, holdover, etc.), the unique nature of realty obviously is such as to make impractical any attempt to allow the tenant to remain in or to recover possession on some sort of bond; instead, if he is wrongfully removed, he may seek triple damages in his plenary action.

For reasons that would call for a more extensive study than is now feasible, the revision of Title 2A of the statutes retained the provisions detailing the method of service. In part, this may be due to the necessity of having statutory authority for the mode of service of the notice to quit, the notice of termination of the tenancy, and the notice and demand for possession, which are jurisdictional prerequisites that must be satisfied before the summary proceeding can be begun in all cases except those grounded on non-payment of rent. Compare N.J.S. 2A:18–53a and 18–53c with N.J.S. 2A:18–53b. Since these steps must be taken before the matter can be brought to court, the drafters doubtless felt that rules of practice and procedure in the Courts could not reach the subject under the constitutional pattern of separation of powers in the State. It may well have been a matter of practical convenience to specify the preferred and alternative modes of service in the statute, both for the pre-court notices and demands and for the summons and complaint. N.J.S. 2A:18–53 and 18–54 must be read together to grasp this point.

Without reviewing now all the forms which the rules of court have taken over the years from 1948, this tentative analysis is confirmed by the provisions in the rules for service of process. The basic provisions are found in N.J. Court Rules 4:4–4 for actions in personam, and in N.J. Court Rules 4:4–5 for actions in rem or quasi in rem against absent defendants.

The rules applicable to the County District Courts call for the same form

of summons to answer as in the upper courts; but for summary dispossess proceedings, the summons is to require defendant to appear and state his defense by a specified date between 5 and 15 days after the date of service. N.J. Court Rule 6:2–1. The affidavit of proof to initiate the proceeding is gone; a complaint replaces it, annexed to the summons. N.J. Court Rule 6:2–2. Service is by cross-reference to the upper court rules noted above. N.J. Court Rule 6:2–3(b).

Since the upper court rules do not, in themselves, provide for service by posting the summons and complaint on the door of the premises, the question naturally arises whether the provisions of the court rules supersede the statutory authority, under the doctrine of *Winberry, supra*. Probably, the statutory authority is preserved through the provision, in N.J. Court Rule 4:4–4(h) which supports service "upon any defendant, as may be provided by law." Thus, the constitutional question advanced here may turn out to be directed not to the challenged statute, but to the rule of court which enables the statutory method to be used and which it is within the power of the Supreme Court of New Jersey to modify. [There is no occasion to explore the question whether that power is exclusive, as claimed by dictum in *Winberry*; there is no question that it can be exercised in the first instance].

Other New Jersey court rules that are pertinent include R. 6:5–2(a), requiring the clerk to inform the parties of the trial date (1) 2 days before trial in tenancy cases to be tried by jury, (2) 10 days before trial in other jury cases, and (3) 7 days before trial *in all other actions* (which would appear to include tenancy cases to be tried without a jury); R. 6:6–3(b), which provides for entry by the clerk of default judgment of possession on affidavit of proof (this being the same sort of evidence that was served on the tenant with the summons under the former statute); R. 6:6–1,

which makes applicable to the county district courts various upper court rules, among them R. 4:42 (which includes declaratory relief), R. 4:43–3 (setting aside entry of default), and R. 4:50 (setting aside judgment, including judgment by default).

On a less comprehensive review of the pattern of the statutes and court rules in New Jersey, it has been said that "it does seem clear that the most probable interpretation of the statutes guarantees due process via the necessary role the state courts play in any eviction." Randell v. Newark Housing Authority, 384 F.2d 151, at 156 (C.A.3d 1967). And, in addition to the items listed in footnote 9 there, it may be observed that the New Jersey courts have hardly shown hesitancy in shaping court procedures to meet the needs of the times. In Vineland Shopping Center, Inc. v. De Marco, 35 N.J. 459, 173 A.2d 270 (1961), the Supreme Court ruled that in these statutory, summary dispossess actions the county district courts are obliged to entertain and decide equitable defenses in order to achieve the grand purpose of the judicial article to completely determine all matters in controversy in a single proceeding. *Vineland, supra*, at pp. 465–469, 173 A.2d 270. In Marini v. Ireland, 56 N.J. 130, 265 A.2d 526 (1970), the Supreme Court ruled that the lessor of residential premises is obliged (in the absence of covenant to the contrary) to maintain them in a livable condition, and if he does not, the tenant may have the work done and deduct the cost from the rent, and this may be shown in defense of a dispossess action for non-payment of rent.

In E. & E. Newman, Inc. v. Hallock, 116 N.J.Super. 220, 281 A.2d 544 (App. 1971), the Appellate Division ruled that tenant could show in defense of a dispossess action for non-payment of rent that his rent was increased in reprisal for organizing a tenants' meeting, even though the increase was made before a new statute on the subject took effect.

And see, also, Sprock v. James, 115 N.J.Super. 111, 278 A.2d 421 (App. 1971); Burstein v. Liberty Bell Village, Inc., 120 N.J.Super. 54, 293 A.2d 238 (App.1972); and Tanella v. Rettagliata, 120 N.J.Super. 400, 294 A.2d 431 (Cty. 1972), for later examples.

And the strictness with which the New Jersey courts have insisted on compliance with the statute and on accuracy and completeness of the officer's return of service is well illustrated by the ruling in Arnheiter v. McAghon, 96 N.J.L. 70, 114 A. 752 (S.Ct.1921). The facts there were complex, but the essence of the pertinent ones was that the tenant under a lease attempted to assign to another, but the lessor refused to consent. The assignee was put in possession despite this. Lessor then sued for possession, naming both the lessor and the assignee. The officer served the tenant by delivery of the summons to the assignee, "the person in possession" (as the return recited). But it appeared that tenant resided elsewhere in the county and could have been served personally there, and that the assignee had been declared bankrupt on the morning of the service, so that it was the receiver who was "the person in possession."

In vacating the judgment of the lower court for lack of jurisdiction, the court commented that:

"The proceedings of ejectment are, of course, entirely statutory, and must be strictly followed to warrant a judgment of dispossession. * * * [The statutes] provide the method of service *which must be personal as in other cases, if such service can be made.* A substituted method of service is provided where for any reason specified in the statute personal service cannot be made. Where the substituted service is made, the return of the officer must show the fact and the reason for its adoption as a constructive method of bringing defendant into court. * * * Constructive service of this character must be based upon the inability of the officer to make personal service, and that fact must be shown in his return or by affidavit in order to present a factual basis for the district court to acquire jurisdiction and to enter a valid judgment. The cases are unanimous upon this requirement." (Emphasis added).

Such factual material as is part of this court's records at this time is quite inadequate in many respects. The only data from the records of the Hudson County District Court are a copy of the complaint, summons and return thereto; a copy of the warrant of removal; and a copy of the form of notice from the constable to tenant.

The complaint is stamped filed on April 20, 1971, and the summons is tested on the same date, calling for appearance on April 28, 1971. It carries a rubber stamp legend: "If you cannot afford to pay for a lawyer free legal advice may be available from Legal Services (OEO). Phone 866–2255."

The return of service is signed by an officer whose name appears to be Costellanti, who is not the same one to whom the warrant of removal was assigned. Using appropriate blocks of the printed form, it says that:

"The defendant *Elba Ortiz* not being found, I served the within Summons and Complaint *4–21 1971.* By affixing the same on the door of the premises, admission thereto being denied." (Emphasized portions indicate what was written in by hand).

Tenant filed an affidavit here, par. 11 of which asserts that tenant had been out of work since April 11, 1971 as the result of an accident on the premises, and that she had been bedridden almost continuously from April 11, 1971 to the date of the affidavit, May 12, 1971. The implication is that she was at home on April 21, 1971. Another affidavit, by her daughter, says that she was living on the premises on April 21, 1971, and was with tenant there all that day; that tenant did not receive any court no-

tice or papers, and that none were seen on the door on that day or on any day before or after.

The affidavit of proof essential to the entry of default judgment by the clerk under the New Jersey court rules is not part of the record nor is there any affidavit by the officer whose return stated that he affixed the papers to the door, "admission thereto being denied."

This return is consistent with tenant's assertion that she was there all day, but implies that he had some factual basis for saying that admission was "denied." Neither tenant's nor her daughter's affidavit says that they heard no knocking on the door, or no ringing of the bell or buzzer, or that the bell or buzzer was out of order. Rather, the implication of their affidavits is that either the papers were not affixed to the door at all, or if they were that some neighborhood children took them off.

Another affidavit by Torres, a tenant in the same building, says that the children who live in the building are not destructive and do not take notices down from the doors, but that others who live in the "bad neighborhood" take unattended items of personal property from the hallways, tear down notices from doorways, and that he has seen them take personal mail of tenants out of the mailboxes, as a result of which he personally waits for the postman daily to get his mail.

The present record shows that tenant received the mailed notice from the second officer, defendant herein, on Saturday, May 8, 1971, advising her to vacate by May 11, 1971. Affidavits by Mr. Madden, of Legal Services, attest to calls made on May 12, 1971 to the Attorney General and to landlord to report his intention to seek a temporary restraining order in this court; but they do not indicate when Legal Services was first consulted in the matter.

An affidavit by the warrant constable, Nobile, defendant herein, says that before actual eviction Legal Services contacted him requesting extra time on the Notice to Vacate to give tenant time to apply for welfare; that the landlord gave the extra time.

The implication of this request is that time was sought on a representation that the effort would result in payment of the rent; but, evidently, tenant's attorney wanted the extra time to prepare and file the papers in the present case. Considerably less effort would have doubtless been sufficient to have the default judgment reopened and a defense on the merits interposed.

In any event, none of the papers so far on file indicate that tenant did, in fact, have a colorable defense on the merits. The rent due was $95. and it was due April 1, 1971. Tenant says she had an accident on April 11, 1971, and had been bedridden thereafter. She does not say she paid the April rent. She did not make payment into court. If she intended to claim an offset to the rent on one of the available theories under New Jersey law, she has not disclosed what it was, or how it arose, or how much it was, or whether she had given notice to the landlord, or anything else.

If tenant had been served personally, failed to appear, had default judgment entered and then sought to have it reopened, she would have had to show that she had some colorable defense. Yet, she chooses not to do so here but challenges the validity of the statute itself instead, and does so in a different judicial jurisdiction which, if she proves wrong, would probably be unable to award the landlord the remedy to which he would otherwise be entitled. What has been done is to split and divide the dispute much in the way that disputes were split and shuttled between the separate courts of law and equity before N.J.Const.1947 was adopted.

■ For these reasons, the claim of unconstitutionality of the statute is insubstantial and the disposition of this

threshold issue precludes certification to convene a three-judge court.

▇▇▇▇▇ Similarly with the class action request. The class defined in the complaint is far too broad and diffuse. An attempt is made by the appendix to tenant's memorandum of law to present statistical data. This is said to have been a study of the relationship between judgments for possession and tenant appearances in Hudson County District Court for the period February 3 to October 19, 1970.

The figures given for the result of the study defy independent analysis. The total number of cases studied was 4,326, and of these 3,027 resulted in judgments of possession. Of these, it is said that in 2,555 cases, tenant did not appear, and that in 639 cases, tenant did appear. The two figures (appear and not appear) add up to 3,294 cases, which does not agree with any other total. The attempt to calculate percentages from these figures is doomed to failure because there appears to be some error in the underlying figures.

But in the area significant to the claim now advanced, there is no data at all. No counts are given of how many tenants were served by affixing to the door. Of that total, no counts are given of how many appeared and how many did not. Of these subdivisions, no distribution is provided to show the grounds for the action. Of those not appearing in rent default cases, and against whom default judgment probably was entered, nothing is given to show how many applied to reopen and how many of these were granted. And so on.

In an action for possession of real estate, it is inherent in the nature of things that aside from validity of the statute, if tenant never learns of the proceeding until the officer arrives with the warrant, he will learn of it then. Notice is inherently inevitable. Nor do statistics about non-appearances and judgment provide any information help-ful to define the proper class for the issue involved. Common experience is that many tenants who are in arrears and have no justification for non-payment simply arrange to move when the summons and complaint are received. The same is true in the case of hold-overs after expiration of the term, and of terminations on notice to quit. Suits in such cases are often filed as a practical means for assuring that the tenant will in fact honor a promise to move out. This can be vital since the owner takes a significant risk if he agrees to rent to another tenant and cannot deliver possession.

As the issue is drawn, then, a proper class cannot be effectively defined in a way that would achieve the objectives of a class action. The motion to certify a class action is accordingly denied.

▇▇▇▇ But, as the Court of Appeals observed, the complaint as amended does state a cause of action. There is nothing before the court at this time that would justify dismissal. The constitutional issue is insubstantial but there is no reason to deny an opportunity for plenary trial and decision. Even though the issue is moot as to the tenant, the issue is of sufficient public importance to justify retention of the case for processing to declaratory judgment. That form of relief is always successful in that it provides an answer, whatever it may be, where there had been but a question.

This result is evidently not a matter of dispute. At the hearing after remand, tenant's attorney agreed that if the case is moot and if it were retained for decision because of its importance, it would be proper to proceed on the declaratory judgment aspect, without the injunction aspect. And, in practical effect, it was also agreed that a declaratory judgment determination would accomplish the purposes of the suit without establishing a class at all (Transcript, p. 19, ll. 7–17).

■ Other problems remain. The only defendant left is the constable, Nobile. This is too thin a basis for processing a matter of as wide a potential effect as this one. The court will entertain suggestions from both sides for the possible intervention of parties, or for submissions amicus, to assure that there will be adequate and active participation and presentation.

■ The Attorney General should be heard from in some capacity, not only because of the constitutional issue affecting a statute but also because of the related questions affecting the rules of court and their proper construction. It may be important to the outcome to know whether this court correctly reads those rules in regard to the command to the clerk to mail notice of trial to the parties. And, if the New Jersey courts have not yet spoken on the question, it may be important to have them pass on that question first, or even to request clarification of the rule. When it adopts rules of Court, the Supreme Court of New Jersey exercises a quasi-legislative function, and petitions for the redress of grievances may be presented to it by anyone for that purpose.

More facts will be needed, and fuller briefing should be provided. Attention is particularly called to State v. Standard Oil Co., 5 N.J. 281, 74 A.2d 565 (1950), aff'd 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1950); Security Savings Bank v. California, 263 U.S. 282, 44 S. Ct. 108, 68 L.Ed. 301 (1923); Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944); and An Act concerning landlords and tenants, passed March 10, 1795 (Pat. 163), especially the recitals in secs. 4, 5 and 6.

Finally, the specific questions put on the remand are answered as follows:

1. The class is not appropriate and no certificate should issue under F.R.Civ.P. 23;

2. The dispute is moot, but the question is of sufficient importance to justify retention for decision;

3. No request to convene a three-judge court is called for because the constitutional issue is insubstantial and because the case remains for processing only on the declaratory judgment aspect, without the injunction aspect.