**Ida CROCKER, etc., Plaintiff,**

v.

**FIRST HUDSON ASSOCIATES, et al., Defendants.**

Civ. No. 82–2331.

United States District Court,
D. New Jersey.

Sept. 22, 1982.

**98**

Gregory G. Diebold, Hudson County Legal Services (Jersey City, N.J.) for plaintiff.

Judith Rodner, Newark, N.J., for defendants.

Irwin I. Kimmelman, Atty. Gen. by Daniel P. Reynolds, and John J. Chernoski, Deputy Attys. Gen., Trenton, N.J., for State of N.J.

OPINION

BIUNNO, Senior District Judge.

The complaint in this case asserts a claim under 42 U.S.C. § 1983, with jurisdiction claimed under 28 U.S.C. § 1331 and § 1343(3), challenging the validity of N.J.S.A. 2A:18–53 as violating the Equal Protection Clause of the Fourteenth Amendment. No allegation is asserted under the Due Process Clause of that Amendment.

The fact allegations of the complaint are scanty. It says that plaintiff occupies premises at 9 Gifford Avenue, Jersey City, N.J., as a tenant by virtue of a written lease entered into by her and "the defendants", who are nowhere described or identified other than by the listing of their names in the caption of the complaint. No mention is made of the date the lease term began, its duration, or any of its terms. The complaint does not say whether the lease is for the entire building, or for quarters within the building, or how many residential units the building contains if it contains more than one. In fact, the complaint does not allege that the lease is of residential property, or for commercial purposes.

There is at most an ambiguous implication, in par. 8, that plaintiff will be "deprived of her home", which could be the case if the lease were of a store and plaintiff chose to live within it.

It then is alleged that on or about July 1, 1982, "defendant" (without indicating which of the three) caused plaintiff to be served with a summons and complaint demanding possession under N.J.S.A. 2A:18–53. The complaint is silent on the question whether the lease term had expired, whether rent had been paid, whether the lease term had been cut short by a notice of termination, notice to quit or demand for possession for breach of any provision of the lease, whether a right of re-entry was reserved, or any of the other facts inevitably involved in this kind of matter.

Rather, the complaint alleges that under New Jersey law landlords seeking possession of [real] property [from a tenant] have the option to bring a plenary action under N.J.S.A. 2A:35–1, et seq., or a summary proceeding under N.J.S.A. 2A:18–53. It is alleged that if a landlord sues under N.J.S.A. 2A:35–1, the parties are afforded a "plenary hearing" with a full right of discovery, trial by jury and appeal. It is alleged that those rights are prohibited or sharply curtailed in a summary proceeding under N.J.S.A. 2A:18–53, and that a defendant/tenant in such a case has no option [which he may exercise of right] to have the suit proceed in a plenary or summary manner.

Paragraph 6 asserts that by affording the option to proceed in a plenary or summary manner to landlords (as plaintiffs) while denying that option to tenants (as defendants) the State of New Jersey, "without a compelling state interest" has denied to tenants "equal access to the judicial system" in violation of the Equal Protection Clause of the Fourteenth Amendment.

Paragraph 7 alleges that in utilizing the summary proceeding, including the use of state officers to execute process and judgment, "defendants" have involved themselves with the State to a degree sufficient

to "convert" their actions to "state action", presumably in the sense those words have been used in cases involving that part of the Fourteenth Amendment which declares that ". . . nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." There is no allegation that any defendant acted "under color of any statute, ordinance, regulation, custom, or usage, of any State . . ." but it is concluded that "relief is therefore available under 42 USC § 1983."

Immediate and irreparable harm is alleged in paragraph 8, followed by demands for judgment that (a) the statutory scheme violates the Equal Protection Clause; (b) defendants be enjoined from proceeding against defendant under N.J.S.A. 2A:18–53, and (c) there be allowed compensatory damages, costs and attorneys fees.

Six days after the complaint was filed, plaintiff filed a motion for a preliminary injunction under F.R.Civ.P. 65(a), or to have trial advanced and consolidated under F.R. Civ.P. 65(a)(2), and for certification of the case as a class action, under F.R.Civ.P. 23. The motion was noticed for August 24, 1982 but since that was not a motion day, the clerk notified plaintiff that the motions were calendared for September 13, 1982.

There is a verifying affidavit by plaintiff. It incorporates her affidavit for leave to proceed as indigent under 28 U.S.C. § 1915. She says that she has limited income (the other affidavit says her only income is $360 [per month?] from the Hudson County Department of Welfare) and that she cannot afford moving expenses, security and advance rental [sic] which would be incurred if she were evicted. She wants to remain as a tenant because the premises afford her and her children a decent and safe place to live. She categorically denies that she or any persons under her control "are doing" any acts which would reasonably [sic] disturb any other residents. She says it is true that for a short time her sister and her children lived with her because they were displaced by a fire, but they have vacated the building and only she and her two children reside there.

*Intervention by New Jersey*

On July 21, 1982, the court issued and sent to Hon. Irwin I. Kimmelman, Attorney General of New Jersey, a certification pursuant to 28 U.S.C. § 2403(b) to inform him that the constitutionality of N.J.S.A. 2A:18–53 had been drawn into question and of the State's right to intervene. By letter dated September 8, 1982 the court was informally told that the State had decided to intervene. An adjournment was sought for the hearing set for September 13, 1982 to provide time to file papers in response to plaintiff's motion for preliminary injunction and other relief, but the Deputy Attorney General was instructed to appear on September 13th at the motion hearing and that the course to be followed would be resolved then.

*The Mootness Aspect.*

Before the motion hearing of September 13, 1982, and at argument on that day, the court was informed that the Hudson County District Court had heard and decided the dispossess action and had ruled in favor of the tenant (plaintiff here). The defendants here, who are evidently owner/lessor/managing agent of the premises, do not plan to file another dispossess action against Crocker, though they naturally reserve the right to do so in the future should the right to do so come into being on the basis of facts or events later than the last judgment.

■ This disposition by the Hudson County District Court obviously precludes any favorable action by this court to grant Crocker's motion for preliminary injunction. There is no longer any pending dispossess action and nothing to be enjoined on any emergency basis. That aspect of the case is obviously moot, and the motion for preliminary injunction must be denied if only for that reason.

While the individual plaintiff, Crocker, evidently has no further interest in the present case, it does not follow that the action itself is moot. See, *Ortiz v. Engelbrecht,* 474 F.2d 977 (CA 3, 1973). In that case a challenge was made to the provision

under State law for posting summons and complaint on the door of the premises when hand service on the tenant, or on a responsible member of the household, could not be effected. There, as here, there was an application for preliminary injunction, and the landlord abandoned the summary dispossess action in Hudson County District Court before hearing. After that, the tenant vacated the premises and her attorney could not locate her. Judge Garth not only denied a preliminary injunction but also ordered the suit dismissed as moot.

An appeal was taken, and the ruling was reversed to the extent that it ordered dismissal, so that declaratory relief might be considered. In fairness to the Court of Appeals, the record disclosed that it had never been provided with a copy of the transcript of the hearing, and so it was not aware that the tenant had vacated the premises and could not be found. See 61 F.R.D. 381, at 386 (D.N.J.,1973).

In *Ortiz,* a hearing had on the declaratory judgment aspect, and class certification was denied, as was a request for convening a 3-judge court [now an anachronism] but the case was retained for decision on the merits. See 61 F.R.D. at 396. Ortiz, however, abandoned further prosecution and the case was eventually dismissed without a ruling on the merits.

In this case, Crocker's attorney wishes to keep the case alive because the issue is one capable of repetition yet evading review even though the summary dispossess proceeding that was pending when suit was filed here has come to an end. *Southern Pacific, etc. v. I.C.C.,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and many other decisions in that line. The question is inherently jurisdictional, involving the specific existence of a "case or controversy". The reported decisions of our highest court are at least Delphic if not less informative than that, with split votes of 5 to 4 not unusual. See, for example, *Super Tire, etc. v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974) and *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), decided about 7 days apart, reaching opposite results, and with the later case making no mention of the earlier one. Also, compare *Board, etc. v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975) with *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). A useful note is "Mootness on Appeal in the Supreme Court", 83 Harv.L.Rev. 1672 (1970).

In any event, the point having come up only informally and shortly before hearing the motion for preliminary injunction, the court is disinclined to dismiss the case as moot although it may well be under the present circumstances.

The discussion to follow indicates why the court lacks confidence that Crocker is a suitable class representative, as well as its doubt that there is in fact a "case or controversy". The hearing transcript should disclose the emphasis put on the importance of having real parties with a real interest in the outcome, in contrast to an academic debate which conjures up notions of mediaeval theorists arguing the question of the number of angels who can dance on the point of a needle without jostling each other, *D'Israeli,* "Curiosities of Literature: Quodlibets", paraphrasing an idea in *St. Thomas Aquinas,* "Summa."

For this case to proceed further, some active group such as a tenants' association, should join as plaintiff, and one or more active associations of owners of rental property for residential use should be joined as defendants. Absent that sort of knowledgeable parties, the record runs the risk of being theoretical rather than realistic, and any ensuing ruling is more likely to be hypothetical than the resolution of a real, live case or controversy. While our judicial process is adversarial, it calls for more than a debate between skilled antagonists. It requires that there be a real party, who will suffer some misfortune from an adverse ruling even though the outcome is not his lawyer's fault.

As observed at the hearing, the parties are to explore this aspect carefully before

incurring more time and money and effort on all sides.

*The Merits of the Case.*

Before the court learned that the Hudson District Court had ruled in favor of the tenant Crocker, it had gathered reference materials pertinent to the scheduled hearing. These are noted here so that due account may be given to them if the case proceeds further.

■ It is well established that to succeed in a suit, under 42 U.S.C. § 1983, two major elements must be shown. The first is that plaintiff was deprived of a right secured by the Constitution and laws of the United States. If that element be established, plaintiff must next establish that the defendant sued deprived her of that right "acting under color" of a State statute. See *Flagg v. Brooks,* 436 U.S. 149, at pp. 155–156, 98 S.Ct. 1729, at pp. 1732–1733, 56 L.Ed.2d 185 (1978), citing *Adickes v. S.H. Kress,* 398 U.S. 144, at 150, 90 S.Ct. 1598, at 1604, 26 L.Ed.2d 142 (1970).

■ Plaintiff founders on the first requirement for a number of reasons too numerous to detail in full, but the major ones are noted here.

*First,* the question whether a jury trial is unavailable in a summary dispossess proceeding under N.J.S.A. 2A:18–53 is by no means clearly the case. There is but one reported decision, by a panel of the Appellate Division of the Superior Court of New Jersey, that says that there has been no jury trial of right in such actions since an amendment to N.J. Court Rule R.6:5–3(a) that took effect September 10, 1973, see New Jersey Law Journal, Vol. 96, pp. 865 and 879, issue of July 19, 1973. The case is *Peterson v. Albano,* 158 N.J.Super. 503, 386 A.2d 873 (App.1978). The Supreme Court of New Jersey has not spoken on the point. Review of *Peterson* was sought, but it was by certification (i.e., seeking leave) and not by appeal of right, and leave was denied, see 78 N.J. 337, 395 A.2d 205 (1978).

There is a very strong likelihood, in this court's view, that the Supreme Court of New Jersey would not uphold the *Peterson*

ruling on a full presentation on appeal of right. The legislative history of what is now N.J.S.A. 2A:18–53, as well as other considerations to be noted, clearly point the other way.

One of the early statutes was "An Act concerning landlords and tenants", passed the 10th day of March, 1795. It dealt with a variety of aspects of the relation, but sec. 10 is of particular interest here. It begins with a legislative finding, followed by an enactment:

> "10. And whereas, landlords are often great sufferers of tenants running away in arrear, and not only suffering the demised premises to be uncultivated, without any distress thereon, whereby their landlords or lessors might be satisfied for the rent in arrear, but *also refusing to deliver up the possession* of the demised premises, whereby the landlords are put to *the expense and delay of recovering in ejectment,* Be it further enacted ..." (emphasis added),

and then follows a forerunner of today's summary dispossess proceeding, under which two justices of the peace, at the request of the landlord, lessor or bailiff or agent, were to go on the premises, view the same, and affix a notice on the most notorious part of the premises, of what day (at least 14 days distant) they would return to take a second view; on the second view, if the tenant or someone on his behalf did not appear and pay the rent, the justices were authorized to put the landlord or lessor in possession and the lease to the tenant was from thenceforth void. The proceedings of the justices were examinable in a summary way by the judges of the Supreme Court who were empowered to order restitution to the tenant, together with expenses and costs, if they saw cause for the same.

A more comprehensive enactment, retaining much of what was in the 1795 statute, was an act of March 4, 1847. Until that Act, where possession was sought of a tenant who held over after his term expired or was terminated for breach, the landlord could obtain possession only by ejectment as a common law action not dependent on any

statute. Section 5 of the 1847 law authorized a provisional and summary procedure for securing possession from a holdover tenant. As with common law ejectment, it provided for a trial by jury but only by a jury of six as in courts for the trial of small causes then in force, but in 1848 the provision was changed to call for a jury of twelve. This statute was revised in 1874, by an act in which the jury provision was found in sec. 15. That section was reenacted, without referring to the earlier laws, by the Act of April 23, 1888, but the jury provision was omitted.

The question arose in *Fry v. Myers*, 56 N.J.L. 115, 28 A. 425 (Sup.1893). In *Fry*, the tenant in a summary dispossess proceeding demanded a jury and one was summoned and appeared. The justice, however, dismissed the jury (presumably because of the 1888 change) and tried the case without it, giving judgment for the landlord. On certiorari, the writ was allowed because the justice was without jurisdiction to try the case without a jury.

The court observed that before 1847, under ejectment proceedings, a jury was a matter of right unless waived, and that the same was true under the 1847 act for summary dispossess for holdover until 1888 (except that for the one year, 1847–1848, a jury of six was specified).

It also observed that by section 16 of the 1847 Act (the vestiges of which still remain as N.J.S.A. 2A:18–59) the Legislature took away the right of appeal or the removal of the proceedings by certiorari "because the party had a right to go before the jury on the facts."

The court expressly eschewed a decision on the constitutionality of the 1888 Act in reference to New Jersey's constitutional guarantee of trial by jury, choosing instead to interpret the statute and to conclude that the provision for jury trial was omitted by mere inadvertence and not by deliberate legislative intent to abolish it in that class of cases.

The express provision was restored, and was certainly there in the revision of 1903, see 1910 Comp.Statutes, "Landlord and Tenant", pp. 3071–3072, sec. 18b. It has stayed on the books ever since and is on the statute books today.

The first major revision after the Compiled Statutes of 1910 was the Revised Statutes of 1937. The jury provision of the Landlord and Tenant Act appeared there as the last sentence of R.S. 2:32–267, which otherwise dealt mainly with matters of practice and procedure.

After adoption of *N.J. Const. 1947,* and the taking effect of the new Judicial Article on September 15, 1948, the new Rules of Court for the County District Courts spelled out the *procedure* for demanding a jury in that court by R. 7:8–2. That rule called for a jury demand to be made not later than 10 days after the date for the defendant to appear or answer, but in "landlord and tenant cases, the demand shall be filed and the fee paid by the demanding party at least 1 day before the return day of the summons."

By P.L.1951, ch. 344, effective January 1, 1952, Title 2 of the Revised Statutes (Administration of Civil and Criminal Justice) was revised as Title 2A, N.J.S. The table showing where provisions of the former Title 2 were to be found in the revised Title 2A, discloses that R.S. 2:32–267, as amended in 1944, was embodied in N.J.S. 2A:18–16. The same table shows that R.S. 2:32–102, which provided for jury trial in the district courts generally, was also embodied in N.J.S. 2A:18–16. The source note for that section discloses that it is derived from *both* R.S. 2:32–102 and R.S. 2:32–267 as amended.

But all that remained of R.S. 2:32–267 after the Title 2A Revision was the sentence calling for jury trial. The rest of that section dealt with matters of practice and procedure, which had been covered by Rule of Court since September 15, 1948. The rules superseded the statutes on matters of practice and procedure, due to the new constitutional assignment of the function of making rules on practice and procedure to the new Supreme Court. See *N.J. Const.,* 1947, Art. 6, sec. 2, par. 3, and *Winberry v. Salisbury,* 5 N.J. 240, 74 A.2d 406 (1950),

cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638.

The *holding* in *Winberry* is no more than that a court-promulgated rule of procedure supersedes pre-existing statutes (the new rules set a 45 day time limit for filing appeals, while the old statute allowed 1 year). The *opinion* in *Winberry,* which affirmed the Appellate Division on the only question before the court, went beyond that question and declared in dictum that the Supreme Court's authority to make rules of practice and procedure was impervious to the qualifying phrase, "subject to law", which was read to mean "substantive law", thus making the phrase redundant and superfluous as observed in Mr. Justice Case's concurring opinion.

In any event, although the question has been followed closely since then, there is no known reported case in which the Supreme Court has actually applied the dictum of *Winberry* to a statute enacted after a court rule. Those with contemporary recollections know that the *Winberry* dictum stirred up a veritable storm of controversy which has periodically erupted ever since. The Supreme Court has evidently avoided a constitutional confrontation with the other branches of government, even to the point of accepting *sub silentio* but without formally conceding the point, the provision in The Evidence Act, 1960, N.J.S.A. 2A:84A–40, that an evidence rule adopted by the court overrides previous statutes on the subject only to the extent that the statute affected is expressly identified by an official footnote. The mechanism has been described with approval, see *Waterfront Commission,* 39 N.J. 436, at 454–456, 189 A.2d 36 (1963) but of course without conceding that the statute binds the court. It also accepted N.J.S. 2A:84A–37, reserving to the Legislature the authority (if its existence prevails) to alter rules of evidence adopted by the court.

In this context, the decision of the Appellate Division in *Peterson, supra* is a slender and doubtful basis for accepting plaintiff's claim that she has no right to a jury trial in a summary dispossess proceeding under New Jersey law. The declaration of that right, going back to at least 1847 (and before if ejectment actions are considered) is on the books today as N.J.S.A. 2A:18–16. That statute is mentioned in *Peterson,* but merely in the course of describing the appellant's claim. It is nowhere discussed or dealt with, and certainly not reviewed in the light of its history.

The problem, which is necessarily a delicate one in the federal scheme, is that the 1973 deletion of the reference to landlord and tenant case demands for jury trial in N.J. Court Rule R. 6:5–3(a) could have no effect beyond removing what was there. What was there, at all times from the first 1948 Rules, was the *procedure* for demanding a jury trial. The *right* to a jury trial has always been *in the statutes,* since at least 1847 and is in there now. Under even the most enthusiastic view of the dictum of *Winberry* it cannot be rationally claimed (or so it seems to the court) that the allowance or denial of a right to jury trial, as distinguished from the procedure to enjoy it, is a matter of "practice and procedure" for rules of court.

New Jersey's constitutional guaranty of trial by jury goes back to its first Constitution of 1776, Art. 22, and has been continued ever since by *N.J. Const. 1844,* Art. 1, par. 7, and *N.J. Const. 1947,* Art. 1, par. 9. For a discussion of the subject, and review of earlier cases, see *Board etc. v. N.Y. Central,* 10 N.J. 294, at 302–305, 90 A.2d 729 (1952).

Another decision worth noting on the jury issue for landlord/tenant summary dispossess actions is *Story v. Walker,* 71 N.J.L. 256, 58 A. 349 (Sup.1904).

Also worth noting is the decision in *Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974), holding invalid a federal statute for the District of Columbia that authorized summary dispossess proceedings without a jury trial, as contrary to Amendment 7. The opinion is for 7 members of the court, the other two concurring in result without opinion.

In that case Justice Marshall reviews the common law status of the right to trial by

jury in actions for possession of real estate. While scholars may regard the historical review as somewhat revisionist, and while the case is not binding on the Supreme Court of New Jersey on matters of state law, it is nonetheless a decision to be reviewed and considered. See also, N.J. Practice (West), Vol. 23, 1982 pocket part. § 3643.

Plaintiff also makes no mention of *Lindsey v. Normet*, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972). In that case, a tenant faced with summary eviction proceedings under an Oregon statute resembling New Jersey's in many respects, filed a federal suit *first* under 42 U.S.C. § 1983, challenging the statute on both due process (not raised here) and equal protection grounds. Except for a provision for double bond on appeal (not involved here), the statute was upheld against both kinds of challenge. On the equal protection issue, the court applied the usual "rational basis" test, and not the "compelling State interest" test. The decision is much in point and suggests that plaintiff will not prevail.

From what has been said, it should be plain that plaintiff has not made a showing that she is, in fact, deprived of equal protection as a matter of state law in terms of a jury trial, whether it be by virtue of state statute or state constitution. This court is not the one to decide the question. It merely observes that the claim is of doubtful validity and so the requisite showing for a preliminary injunction has not been made.

The same difficulty is evident in regard to discovery and other trial features. Since 1948 these matters have not been governed by statute but by court rule. Plaintiff attacks the statute, which does not deal with the subject, and ignores the court rules that regulate it.

In fact, plaintiff wholly ignores N.J. Court Rule R. 4:67, which authorizes a wide variety of actions to be handled procedurally in a summary manner, including, no doubt, actions for ejectment under N.J.S.A. 2A:35–1.

Plaintiff cites *Lugar v. Edmonson Oil,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). That case has no application here. As the opinion takes care to record, "The holding today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment", see footnote 21. The present case does not involve that context at all, and beyond that, since no adequate showing has been made that plaintiff was deprived of equal protection, the second element of § 1983 (action under "color of" a state statute) need not be reached or dealt with at this stage.

■ There is also the matter of a bond. F.R.Civ.P. 65(c) requires security for damages, not merely for costs, in the event a preliminary injunction is issued and later found not to have been warranted. Plaintiff's proofs are that she is indigent and the implication is that she is unable to post bond. That being so, no preliminary injunction can issue in any event. The permission to proceed under 28 U.S.C. § 1915(a) does not relieve plaintiff of the obligation to bond for damages.

Nor should there be an advancement or consolidation of the trial on the merits at this time under F.R.Civ.P. 65(a)(2). There is no presentation of any fact material, such as the alleged lease, certified copies of all papers on file in the county district court, or the like. While a variety of facts are discussed in the brief, none of them is established on the record by affidavit, exhibit or other proof. The motion is premature.

■ Finally, the motion for certification as a class action is denied at this time. If there be any merit in the claim of denial of equal protection (which does not now appear) there will need to be a far more thorough exposition of applicable State law, whether on its constitution, statutes or court decisions, than has been attempted. The subject is an intricate one with a lengthy history and a great mass of pertinent materials (a few of which are noted above) which must be explored with considerable care. The superficial presentation made so far gives the court little confidence

that plaintiff can or will adequately represent the putative class.

*Future Processing.*

If the case is to go further, with active, interested parties with something to gain or lose, it will probably be necessary to amend the pleadings.

The challenged statute section, N.J.S.A. 2A:18–53, is evidently the wrong statute. That section, preceded since 1937 by N.J. R.S. 2:32–265, derives from the 1847 statute mentioned above. It was modified in 1974 by what is euphemistically called the "Anti-Eviction Law", whose provisions left N.J.S.A. 2A:18–53 applicable only to non-residential tenants and to those residential tenants who rent in owner-occupied premises with not more than two rental units, or who rent space in a hotel, motel or other "guest house" rented to transient guests or seasonal tenants (the language leaves a great deal to be desired since "guests" at a hotel, motel, inn, or the like are not "tenants" at all).

For all other residential tenants, of whom plaintiff Crocker seems to be one, the grounds for summary dispossess are governed not by N.J.S.A. 2A:18–53 but by the 1974 statute as amended and supplemented, and which is found at N.J.S.A. 2A:18–61.1 et seq. That statute is not challenged, nor are the Rules of Court that apply to summary dispossess proceedings, which are limited to the landlord/tenant relation, and which are much narrower in that respect than common law eviction, as modified by N.J.S.A. 2A:35–1, which applies not only where the occupant in possession is a tenant but also where he is not.

Thus, a much more carefully drawn set of pleadings will be needed before the court can afford to put more time into this case. Since the 1974 amendments the statutory pattern has become quite complex and intricate. Plaintiff Crocker is probably wholly unequipped to act as a class representative for a group that includes large retail stores, factories, offices and other premises occupied by substantial commercial tenants. She is probably unequipped to serve for a class that includes residential tenants of "luxury" apartments whose eviction is grounded on conversion of the property to cooperative, condominium or other like form of ownership in severalty.

This problem goes not only to the substance of the suit but also to the proper definition of a class if there is to be a class certification at all. It is worth observing that *Greene v. Lindsey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249, 72 L.Ed.2d 249 (1982), although filed as a class action, was decided without having had a class certified at all.

*Conclusion.*

For the reasons discussed the court will enter an order denying plaintiff's motions for:

1. preliminary injunction against further processing of the Hudson County dispossess proceeding;

2. certification of "all tenants" as a class;

3. advancing trial on the merits and consolidating it with the preliminary injunction hearing as allowed by F.R.Civ.P. 65(a).

The court also reminds the parties of the quite provisional nature of the landlord/tenant summary dispossess proceedings under New Jersey law, and the absence of any effect of res judicata or collateral estoppel from their judgments, all as more fully discussed in *Ortiz,* supra, 61 F.R.D. 381 (D.N.J.1973).