Samuel S. Baer, Respondent, v. Durham Duplex Razor Company, Appellant.

First Department, February 14, 1930.

*Terence J. McManus* of counsel [*Lester D. Melzer* and *Robert Carey* with him on the brief; *McManus, Ernst & Ernst*, attorneys], for the appellant.

*Joseph Fischer* of counsel [*Louis J. Vorhaus* with him on the brief; *House, Grossman & Vorhaus*, attorneys], for the respondent.

PROSKAUER, J.   The plaintiff has recovered judgment in an action for the breach of an alleged contract by which the defendant agreed to market a razor invented and patented by the plaintiff, to pay the plaintiff one cent per razor royalty thereon, with the understanding that the minimum royalties paid would be on the basis of 200,000 razors a year.   The defendant challenges the existence of any contract at all.   Plaintiff's reliance in this respect is upon an exchange of correspondence.   On October 27, 1925, the defendant wrote a letter, which was signed by the plaintiff as well, in which the defendant stated, " We desire to take an option on this patent for sixty days on the following terms."   The letter then proceeds to state the above-mentioned terms.   It continues: " For this option which you agree you have a right to give us, we are handing you our check for $200.   Should our attorneys decide that the patents are not strong enough and cannot be sustained and if, on investigation, we feel that the market does not warrant the taking by us of this option, we will have the right, at the end of sixty days, to refuse to do so and there will not be any obligation on our part of any nature whatsoever — monetary or otherwise. * * * Should we decide to accept the option, the $200 is to become a portion of the first year's royalties.   Should we enter an agreement and accept this option the said agreement is to be

for ten years and on the assigning of the agreement, you agree to assign the patents to us, with the understanding that they become our property at the end of the ten years. During the continued life of the patent we agree to pay you one cent per razor." At the end of this letter was a further memorandum signed by both parties reading as follows: " It is further agreed that my attorney, Sterling P. Buck, will disclose to your attorney, Sydney I. Prescott, all of the subject matter, claims, etc., as well as citations made at the patent office, covering the patent." On December 23, 1925, the defendant wrote the plaintiff: " This is to notify you that we hereby accept the option that we have on your safety razor patent, said option dated October 30th. On my return to my desk, about the middle of January, we will get together and make up a contract that will be satisfactory to you and to ourselves. There were some things in the contract that you submitted that our attorney did not quite like, but they are only of minor importance and a matter of wording." Thereafter the parties endeavored to agree upon the terms of a formal contract. The defendant's attorney insisted on a form of contract, however, in which, not the defendant, but a subsidiary, known as the Wade & Butcher Corporation, was a party. It contained no minimum guaranty of sales of 200,000 razors a year; it gave the licensee the privilege to terminate the agreement at the end of any three months' period during which the *bona fide* demand for the razors might be less than 50,000; it endeavored to impose upon the plaintiff a promise to indemnify against infringement suits. Obviously it contained terms not at all embraced within the original exchange of correspondence.

This original correspondence we hold constituted a contract and its force as such is not weakened by the intention of the parties to reduce the agreement to an integrating document. (*Sanders* v. *P. B. F. Co.*, 144 N. Y. 209; *Ferguson Contracting Co.* v. *Helderberg Cement Co.*, 135 App. Div. 494.) Here the defendant took an option and thereafter wrote the unequivocal language: " We hereby accept the option that we have on your safety razor patent, said option dated October 30th." It thereby assumed a specific obligation, which it could not avoid by insistence upon the execution of a formal contract containing terms not embraced within the original understanding.

The defendant further claims that there could be no recovery, after defendant's repudiation of the contract, for the entire damages sustained by this breach, that the contract was one for the payment of money only, and that the doctrine of anticipatory breach is not applicable. At the outset it may be observed that here was an actual breach by the defendant's refusal to enter into a formal

agreement in accordance with the terms of the informal correspondence. (*Nichols* v. *Scranton Steel Co.*, 137 N. Y. 471; 3 Williston Cont. §§ 1317, 1318.) This is not a contract solely for the payment of money. The cases relied upon by the defendant involve leases (*McCready* v. *Lindenborn*, 172 N. Y. 400), insurance contracts (*Kelly* v. *Security Mutual Life Ins. Co.*, 186 N. Y. 16), specialties and contracts to pay money in installments for support or during the life of a promisee (*Bauchle* v. *Bauchle*, 185 App. Div. 590; *Werner* v. *Werner*, *No. 3*, 169 id. 9). These cases involve considerations peculiar to the nature of such obligations. Here the defendant did not engage to make specific payments of money in installments, but to market the razor. The plaintiff may well have been damaged by the defendant's refusal to proceed far more than the amount of the minimum royalties, though these minimum royalties constituted all the damage he could prove. The action essentially is not to recover the minimum royalties, but to recover damages for the breach of the contract, which happened here to be measured by the minimum royalties. (*Ducasse* v. *American Yellow Taxi Operators, Inc.*, 224 App. Div. 516, 522.)

We think, however, that there was an error in the computation of the damages. The court charged the jury that the damages were $2,000 a year for ten years, less $250, the value of the patent, " unless you care to consider the offer of $500 made by the defendant as bearing upon the value of the patent." The jury evidently computed the damages by charging the defendant with $20,000, crediting it with $500 as the value of the patent which the defendant retained and with the $200 paid at the time of the execution of the option, and thus arrived at a verdict of $19,300. But the $20,000 of royalties were not payable to the plaintiff at once. They were distributed over a period of ten years, and the charge against the defendant, therefore, should not have been $20,000, but the present worth of $20,000 payable in installments over a ten-year period. (*Nichols* v. *Scranton Steel Co.*, 137 N. Y. 471, 487; *Scientific American Compiling Dept.* v. *Gillespie*, [Ala.] 58 So. 756.) In the former case, PECKHAM, J., wrote: " Those damages would be the present worth of the moneys payable under the contract at the time therein provided. Thus if the moneys were to be due at the end of four months from the time when the iron was, by the terms of the contract, to be delivered, the measure of damages would be, in such case, the present worth of an obligation to pay money due at such a certain time." In the latter case, WALKER, P. J., wrote: " The present value of a contract entitling one to payments of money in installments, some of which are not yet due, must

be less than the aggregate amount of the unpaid installments with interest added on those past due. The cash in hand is more desirable than an obligation for the same amount payable at some time in the future."

The judgment and order appealed from should, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event, unless the plaintiff stipulates to reduce the judgment in accordance with this opinion. If he so stipulates, the judgment and order appealed from should be affirmed, with costs.

DOWLING, P. J., MERRELL, MARTIN and O'MALLEY, JJ., concur.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event, unless plaintiff stipulates to reduce the judgment in accordance with opinion. If he so stipulates, the judgment and order appealed from will be affirmed, with costs. Settle order on notice.