120 N.J. Super. 400 (1972)
294 A.2d 431
CHARLES TANELLA AND ANNA TANELLA, HIS WIFE, PLAINTIFFS,
v.
MARY ALICE RETTAGLIATA, DEFENDANT.
Superior Court of New Jersey, Bergen County District Court.
Decided July 19, 1972.
*403 Mr. Vincent McCarthy, Attorney for Plaintiff (Bergen County Legal Services Assurance Corp.)
Mr. Guy J. Lanza, Attorney for Defendant.
PAUL R. HUOT, J.D.C.
In this action plaintiffs seek (1) damages for the value of a washer and a dryer; (2) damages *404 for distraint of a washer and dryer; and (3) damages for trespass. Defendant counter-claims for rent due March, April, May and June at the rate of $235 per month, and damages to the garage located upon the property. Plaintiffs' defenses to the counterclaim raise interesting legal questions.
Plaintiffs and defendant entered into a written lease agreement, Ex. J-1 Ev., by which plaintiffs (tenants) leased from the defendant (landlord) an apartment on the second floor of premises known as 263 Terrace Avenue, Hasbrouck Heights, New Jersey, for a term of two years beginning July 1, 1969 and terminating June 30, 1971, at a monthly rental of $215 per month during the first year of said term and $235 per month during the second year of said term.
The plaintiffs entered into possession of the apartment and continued therein without event until 1971. Personal problems then developed and under date of February 18, 1971 the plaintiffs wrote to the defendant, Ex. D-1 Ev., requesting a termination of the lease on March 31, 1971 and use of the security deposit for March rent.
The defendant replied under date of March 2, 1971, Ex. D-2 Ev., indicating conditions to be met by plaintiffs to obtain defendant's consent to termination and requiring that such terms be accepted by March 5, 1971.
The plaintiffs did not respond to Ex. D-2 Ev. by March 5, 1971 (which the court notes was a Friday) and on March 8, 1971 a summons and complaint in tenancy was issued from this court by defendant. A copy of the same was served upon the plaintiffs by the constable on March 11, 1971 by affixing a copy to the door of the premises. The return date for trial of the landlord-tenant dispossess was March 18, 1971 at which time the plaintiffs herein did not appear. The case was marked default but no proofs were ever received and no judgment of possession was entered. The tenancy complaint sought possession for nonpayment of the rent due March, 1971.
The plaintiffs removed their possessions, except the washer and dryer, from the premises on March 19, 1971.

*405 I
In this action the plaintiffs seek the value of the washer and dryer which they contend was not removed because the defendant would not permit peaceable removal. The defendant denies this but admits that she did require, before removal, that plaintiffs provide a licensed plumber to disconnect the appliances.
The court finds as a fact that defendant did prevent plaintiffs from removing the washer and dryer on March 19, 1971 and required the services of a licensed plumber as a condition for removal. The court finds that defendant paid a licensed plumber $36.75 on or before July 1, 1971 to remove said appliances and to place them in her garage. The court further finds that since July 1, 1971 the washer and dryer were available to plaintiffs for the taking, but that plaintiffs did not obtain the same until March, 1972.
The complaint in the instant matter was filed June 2, 1971 and seeks damages for the retention of the washer and dryer. These items are now in possession of the plaintiffs so that their value has been eliminated from this case as a measure of damages.
Plaintiffs contend that they are entitled, at least, to the reasonable rental value of the washer and dryer or the cost of doing laundry at a commercial laundry for the period of one year that they were deprived of their appliances.
Defendant contends that plaintiffs are not entitled to any money for such deprivation because the failure to have the use of their appliances was caused by plaintiffs' acts. Defendant contends that the request for a licensed plumber was reasonable on the part of defendant, that plaintiffs could have obtained such plumber, removed their appliances and, if they felt it to be an unreasonable expense, sued for the costs.
The Building Inspector of the Borough of Hasbrouck Heights was called by the plaintiffs as an expert to *406 testify that a licensed plumber was not required to disconnect the washer and dryer. The court accepts this as a fact and finds the requirement by the defendant to be unreasonable. However, the court finds equally unreasonable the refusal of the plaintiffs to obtain a plumber for such removal. To leave behind two valuable and necessary appliances because of defendant's demand for a plumber is nonsensical. Plaintiffs' damage was caused more by their own acts than by the act of defendant.

II
The defendant has counterclaimed for rent for the months of March, April and May at $235 per month, less the security of $215 or a net of $490 in the first count of the counterclaim and for $150 damages to the garage in the second count. No evidence was adduced by the defendant concerning damage to the garage or any other property so the second count must fall for failure of proof.
The counterclaim seeks rent for March, April and May but the case was tried and argued, without objection, for March, April, May and June, the balance of the lease term. Likewise, without objection, the case was tried and argued that the plaintiffs were entitled to a return of security. Since both parties presented evidence and legal argument in the assertion of these claims the court amends the pleadings to conform to the evidence and arguments asserted. Rule 4:9-2; Rule 6:3-1.
The defendant did not obtain a new tenant until July 1, 1971 and argues that she is entitled to the rent for the apartment by virtue of the lease, Ex. J-1 Ev. The lease term, as cited above, was until June 30, 1971 at a monthly rental, at the time in question, of $235 per month. In addition paragraph Eighth of the lease provides:
EIGHTH: That in case of default in any of the covenants or if the premises become vacant, the Landlord may re-enter by means of summary proceedings or any other method prescribed by law, with *407 or without notice of an intention so to do, and resume possession and re-let the premises in his own name, without terminating this lease or in any manner affecting the obligation of the Tenant to pay the rent herein covenanted to be paid, in which event, however, there shall be credited to the account of the Tenant the amount received from re-letting after deducting the expenses of such summary or other proceedings as may be necessary in order to regain possession under this provision, as well as the cost of re-letting the premises, and repairing and redecorating if any, and the execution of a new lease for the same premises shall not terminate the Tenant's liability or obligations hereunder, which shall in any event remain in full force and effect for the full term of this lease, and a Tenant, who has once vacated may not re-enter without the consent of the Landlord or his Agents, and no act or thing done by the Landlord or his Agents during the term hereby granted, shall be deemed an acceptance or a surrender of said premises, and no agreement to accept a surrender of said premises shall be valid, unless the same be made in writing and personally subscribed by the Landlord. And the Landlord further reserves the right to rent the premises for a longer period of time than fixed in the original lease without releasing the original Tenant from any liability. The Tenant hereby expressly waives any and all right of redemption in the event the Tenant shall be dispossessed by judgment or warrant, of any court or judge, and the Tenant waives and will waive all right to trial by jury in any summary proceeding hereafter instituted by the Landlord against the Tenant in respect to the demised premises or in any action brought to recover rent or damages hereunder. (Emphasis added).
It has long been held that a court must enforce a contract between parties as written, and it may not re-write the terms which the parties have agreed upon. Marini v. Ireland, 56 N.J. 130, 143 (1970); citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36 (1960). And it has long been the law in New Jersey that a landlord may recover rent from a tenant for the entire term of the lease. Fibish v. Bennet, 131 N.J.L. 98 (Sup. Ct. 1943), aff'd 132 N.J.L. 168 (E. & A. 1944).
If a tenant abandons the property the landlord may permit it to remain idle and recover rent from the tenant, or, he may re-enter, in which event he has the duty to seek a new tenant to minimize his damage. Weiss v. I. Zapansky, Inc., 65 N.J. Super. 351 (App. Div. 1961), and cases cited therein.
*408 Plaintiffs, however, argue that there was no abandonment. Plaintiffs contend that there was a valid surrender of the premises and that a valid surrender terminates the obligation to pay rent. Plaintiff relies upon Duncan Development Co. v. Duncan Hardware, 34 N.J. Super. 293 (App. Div. 1955), cert. denied 19 N.J. 328 (1955), and Hunt v. Gardner, 39 N.J.L. 530 (Sup. Ct. 1877). In Duncan the court said at page 299 of 34 N.J. Super.:
Surrender may be express or implied by law. To warrant a surrender by operation of law, the minds of the parties must concur in a common intent of relinquishing the relation of landlord and tenant, and that intent must be executed by acts tantamount to a stipulation to put an end thereto. It results from acts which imply mutual consent independently of the expressed intention of the parties that their acts shall have that effect. (Citations omitted). The acts must be incompatible with the continued existence of the relationship of landlord and tenant under the lease.
To constitute a surrender of a lease by act and operation of law, there must not only be an abandonment by the tenant, but an acceptance by the landlord (Citations omitted). But the mere receipt of keys and the landlord's endeavor to relet the property may not, without more, constitute an acceptance of surrender. (Citations omitted).
Whether there has been a surrender by operation of law depends on the intention of the parties to be deduced from their words and acts ... the burden of proof is on the party alleging the surrender, and where it is to be inferred from circumstances or conduct inconsistent with an intention to perform, the proof must be clear (Citations omitted).
The plaintiffs' position is that the institution of the tenancy action T 25734 by the defendant constituted an acceptance by the defendant of plaintiffs' abandonment of the premises. The tenancy action sought possession of the premises because the plaintiffs failed to pay rent for the month of March. The court cannot construe the tenancy suit as an acceptance of abandonment because at the time of the suit there had not yet been a physical abandonment. Further, D-1 Ev. was precatory in nature, not declaratory, and, thus, does not give rise to the argument of anticipatory breach.
*409 The plaintiffs argue, in the alternative, that the institution of the tenancy action was an act by the defendant so contrary to the landlord-tenant relationship that it constituted a valid ground for removal by the tenant. However, this argument ignores the acts and words of both the plaintiffs and defendant prior to the institution of suit. Further, to accept this argument would be tantamount to saying that a person who breaches a contract is absolved from responsibility for such breach if the other party to the contract takes any action to enforce his legal rights. The results of such a decision would be to require landlords who have a written lease with a tenant to permit the tenant to live out the entire term without paying rent before suit could be brought. It would also permit a tenant to unilaterally breach his contract and not be responsible for the breach. In other words, what the plaintiffs here say is that if a landlord seeks to dispossess a tenant for nonpayment of rent, he thereby waives all his contractual rights. He has, in effect, chosen to enforce statutory rights in lieu of contractual rights. The logical corollary to plaintiffs' contention is that in order to enforce his contractual rights, a landlord must waive his statutory right to dispossess for nonpayment of rent and be relegated to a suit for damages, that is, upaid rent, at the termination of the term.
In Raleigh Realty Corp. v. Jacobs, 127 N.J.L. 454 (Sup. Ct. 1941), the landlord obtained a judgment for rent due March, April, May and June, 1940, where the tenant had been disspossessed by statutory proceedings. The Supreme Court there affirmed a district court judgment because the lease there, as here, granted the right to the landlord to re-enter, upon default by the tenant, and re-let for the benefit of the tenant who would remain liable for the term. The court there said, p. 455:
The clear implication of the language now under consideration is that the tenant remains liable for rent if he deserts the premises or is evicted because of default in his obligations.
*410 And in Fibish v. Bennett, 131 N.J.L. 98, 99 (Sup. Ct. 1943) was said:
* * * here the lease bound the defendants to pay the rent for the period of the letting and authorized the landlord in the event the premises became vacant or deserted to re-enter and relet same and to apply the rent so received toward the rent due under the lease. The eviction (by summary dispossess proceedings for nonpayment of rent) did not absolve the tenants from the obligations of the lease to pay the rent. There was no reletting during the remainder of the term. It seems clear that the meaning of the lease was that the tenant was to pay the rent irrespective of why the premises were vacated, whether by a voluntary vacation by the tenant or by an eviction by lawful proceedings * * *.
Fibish v. Bennett, supra, was affirmed, 132 N.J.L. 168 (E. & A. 1944), but modified by the Court of Errors and Appeals to apply to cases "where the `eviction by lawful proceedings' is the result of the default of the tenant in the discharge of an obligation imposed on him by the lease * * *."
The tenants here raise this question anew. In effect, the tenants argue that this should not be the law today. In effect, the tenants argue what Judge Pashman said in John F. Inganamort et al. v. Fort Lee et als, 120 N.J. Super. 286, (Law Div. 1972):
The law cannot be so rigid that society is helpless when traditional concepts are not entirely adequate for new issues * * * Judicial imagination must be equal to this challenge.
A lease is a written contract, as any other written contract. A breach of the lease contract gives rise, as the breach of any other contract, to a right to sue for damages for the breach. The New Jersey statutes which govern landlord-tenant relations is a legislative recognition that damages for breach of contract are not always an adequate remedy. Thus, for years summary dispossession was available to a landlord where a tenant failed to pay rent, as was distraint, detainer and the other self-help measures. More *411 recently with the increased shortage of housing, judicially noticed in Academy Spires, Inc. v. Brown, 111 N.J. Super. 477, 480 (Cty. Ct. 1970), measures have been adopted to balance the scale in behalf of the tenant. The Reprisal Act L. 1970, (c. 210, N.J.S.A. 2A:42-10.10 et seq.), The Administrator of Rents Act (c. 224, N.J.S.A. 2A:42-74 et seq.), The Amendments of 1971 concerning distraint (c. 228, N.J.S.A. 2A:33-1), detainer (c. 227, N.J.S.A. 2A:39-1 et seq.) and security deposits (c. 223, N.J.S.A. 46:8-19 et seq.).
All of these statutes, whether for the benefit of the landlord or for the benefit of the tenant, are superimposed on the rights and duties of both landlord and tenant as expressed in the lease.
At the time of plaintiffs' breach of the lease by nonpayment of the rent due March 1971 the landlord had the following course of action open to her: (1) she could sue for the rent due for March 1971; (2) she could sue, as she did, for possession under N.J.S.A. 2A:18-53; (3) she could wait until the end of the lease term and sue for all unpaid rent; (4) she could enter peaceably, change the locks and detain the premises (Chapter 227 of the Laws of 1971 was not adopted until June 1971); (5) she could distrain the chattels of the plaintiffs until payment of the March rent (Chapter 228 of the Laws of 1971 was not adopted until June 1971).
Thus, at the time of plaintiffs' breach the defendant had five possible remedies available to her by statute or general contract law. In addition, she had the following remedies through paragraph Eighth of the lease: (1) she could enter without court action; (2) she could enter and re-let the premises; (3) she could hold the plaintiffs for rent for the entire term.
In contrast, at the time of plaintiffs' breach, a tenant had the following remedies available in the event of a breach by a landlord: (1) he could move out and hope that a court would find that the reason for vacating was *412 sufficient to constitute a constructive eviction; (2) he could sue for damages for breach of the contract; (3) he could withhold the rent for the repair of vital facilities, Marini v. Ireland, supra.
No remedies were provided by the lease contract to the tenant for a breach by the landlord.
This imbalance was somewhat cured by the Legislature in June 1971 as indicated above.
Mutuality of remedy is not a prerequisite to the validity of a contract. Mutuality of obligation is, however, a requirement for all contracts. 51C C.J.S., Landlord and Tenant §§ 189, 210c. Consideration from each party to a contract must be furnished by each party. And, thus, plaintiffs argue that they should not be held to pay rent for "use and occupancy" if the defendant is not obliged to make that "use and occupancy" available. If a landlord exercises his right to dispossess a tenant, he should do so as a waiver of all rights to collect future rent.
If a landlord seeks summary dispossession he may not obtain rent also. In the recent case of Sprock v. James, 115 N.J. Super. 111 pp. 113, 114 (App. Div. 1971), it was said:
* * * the actions were simply for possession on the ground of nonpayment of rent. Brought as they were under the summary dispossess statute, they were not actions for recovery of the rent. To the extent that the rent * * * was paid over to the landlord, it gave the landlord a remedy * * * not available in her particular action. To the extent that payment was thus made, the payment abrogated the grounds for possession * * * the court's action in permitting the landlord to have both possession and the rent was error.
A landlord may not have both possession and rent in a summary dispossess action. Likewise, in a suit for rent, a court could not order dispossession. If a landlord waited until the end of the lease term to sue, obviously he would have waived any right to possession. If a landlord entered peaceably and detained the premises and/or *413 distrained the chattels of the tenant the obligation for rent (without written contrary terms) would cease with the cessation of occupancy. Thus, certainly, without consideration of the written agreement, the use of statute or contract law as a remedy would be mutually exclusive  the landlord would have made an election of remedies.
Does the lease herein alter the obligation of the landlord to elect his remedy? Paragraph Eighth is set forth in full above and specifically reserves to the defendant the right to dispossessess the plaintiff and still hold the plaintiff for rent for the term of the lease. And, as the cases discussed above indicate, this has been sufficient to permit recovery by a landlord.
Yet, here is where the basic contractual concept of mutuality of obligation arises. The enforcement of this lease provision is to require plaintiffs to pay rent but not require the defendant to provide anything as consideration for that rent. While this lease, as all form leases, is heavily weighted for the benefit of the landlord, there is mutual consideration to validate the agreement. However, once the tenant is out of possession, the only consideration flowing from the landlord has ceased.
It is true that dispossess proceedings indicate a prior breach of a contract on the part of the tenant. That breach as any breach of contract, gives rise to an action for damages by the aggrieved party. Here, however, the defendant wants damages in the form of rent for the breach of the lease as well as a return of consideration. In no other area of contract law is it possible to obtain a judgment for the purchase price and a return of the article purchased. This court does not believe that it should be true in landlord-tenant actions either.
That does not mean, however, that a landlord would not be entitled to damages for the breach of contract by the tenant. Those damages will be measured under the general rule of damages which flows from the breach and thus may *414 be more or less than the amount of the rent reserved for the term of the lease.
However, it is not necessary for this court to determine that changing circumstances demand a change in law. All of the prior decisions which permitted a landlord to recover rent for the balance of the lease term concern leases wherein rent for the lease term was reserved. In that element they are distinguishable from the case sub judice.
The lease between plaintiffs and defendant here provides for the letting of the premises for the term of two years "to be used and occupied as a strictly private dwelling apartment for the tenant and members of his family only and for no other purpose, payable in monthly payment of Two hundred fifteen dollars, in advance on the first day of each and every month during the said term, * * *." (Emphasis added).
Here is no reservation of rent other than a monthly reservation. Rent became due on the first of each month, and only then. And, if the tenant is dispossessed before the rent becomes due, the tenant is obligated to pay only the accrued rent. A dispossession does not end a tenancy for all purposes, but the rent and the remedy for its collection are suspended. Hunter v. Reilly, 43 N.J.L. 480 (Sup. Ct. 1881), so holds and is constantly cited as authority and as a landmark decision.
The court concludes that the reservation of rent was for a monthly term not a two year term; that the March 1971 rent in the amount of $235 was reserved and accrued and due to the landlord; that the taking of a default in the dispossess action was a sufficient election of remedy to justify the vacating of the premises by the tenant; Lizak v. Rottenbucher, 140 N.J. Eq. 76 (Ch. 1947); Newsom v. Liberty Sign Co. et al., 416 S.W.2d 442 (Civ. App. Texas, 1967); Carter v. Long, 455 S.W.2d 812 (Civ. App. Texas, 1970); that such election bars the recovery of rent where possession is surrendered; that *415 defendant is entitled to $235 which is the rent due for March 1971; that the plaintiffs are entitled to credit of $215 security; that defendant is entitled to a judgment on the counterclaim of $20.
In summary then, there will be a judgment in favor of the defendant on the complaint of no cause for action and a judgment in favor of the defendant on the counterclaim for $20.