**PASSAIC DISTRIBUTORS, INC.,**
**Plaintiff,**

v.

**The SHERMAN COMPANY, Defendant.**

**No. 73 Civ. 4749.**

United States District Court,
S. D. New York.

Dec. 16, 1974.

Miller & Novick by Bernard Novick, New York City, of counsel, for plaintiff.

Goidel & Goidel by Alvin I. Goidel, New York City, of counsel, for defendant.

ROBERT J. WARD, District Judge.

This is an action for damages resulting from the loss of a subtenant because of the failure of defendant The Sherman Company ("Sherman") to consent to the subletting in accordance with the terms of a lease dated August 26, 1965 ("the main lease"). The case was tried to the Court.

Plaintiff, Passaic Distributors, Inc. ("Passaic") was a tenant of the defendant Sherman in Building 1F in the Sherman Industrial Center located at Dayton Avenue, Passaic, New Jersey. Both parties were assignees of the main lease. Paragraph 14 granted the lessee the right to sublet all or part of the premises for all or part of the unexpired term for any lawful purpose, "provided, however, the written consent of Lessor shall be first had and obtained, which consent shall not be unreasonably withheld and shall be given promptly."

In or about August, 1972, plaintiff, desirous of subletting the premises it occupied, negotiated an oral agreement with Hawthorne Prints, Inc. ("Haw-thorne") whereby the latter would take over the obligations of plaintiff's lease with the exception of rent to be paid. Hawthorne agreed to pay rent to Passaic at $1.10 per square foot, commencing November, 1972 for the balance of the term. Plaintiff would remain liable on the main lease. By letter dated August 9, 1972, plaintiff notified defendant of the sublet agreement with Hawthorne and, pursuant to the foregoing provision, requested consent to the subletting. The defendant refused to consent.

Thereupon, in accordance with the terms of the lease, plaintiff submitted the question of the propriety of the sublet to arbitration. In a decision rendered on January 9, 1973, the arbitrator found:

"The Sherman Company . . . acted in contravention of the lease provision in refusing to consent to the proposed subletting of the premises covered by the lease agreement dated August 26, 1965, by Passaic Distributors, Inc. . . . to the proposed subtenant Hawthorne Prints, Inc."

Meanwhile, Hawthorne Prints, finding itself unable to await the outcome of the arbitration, leased other premises. Subsequently, plaintiff obtained permission from defendant to sublet its space to Rempac Foam Corporation under a lease dated June 5, 1973 at a rent of $1.00 per square foot. Plaintiff, by this action, seeks to recover the difference between the rent it receives from Rempac and what it would have received from Hawthorne and the expenses it incurred in obtaining the second subtenant.

Defendant argues strenuously that there was not a sufficient agreement between plaintiff and Hawthorne to enable the Court to assess damages. It contends there was never a meeting of the minds on essential terms of the lease and, therefore, the negotiations never ripened into a contract. The Court finds that Hawthorne had agreed to be bound by all the terms of the main lease except for rent to be paid. As to this, it is uncontradicted that Hawthorne

agreed to pay $1.10 per square foot. There was a meeting of the minds between plaintiff and Hawthorne and the contract was frustrated by defendant in refusing to fulfill its obligation under the main lease.

■ Defendant next argues that even if there was an oral agreement of sublease between plaintiff and Hawthorne, the agreement was unenforceable beyond three months by reason of New Jersey law. N.J.S.A. 25:1–1; 2A:18–56. Even if the New Jersey statute is applicable,[1] it cannot be interposed by defendant in this action. The New Jersey statute is a statute of frauds for the protection of the party sought to be charged. It is personal and not available as a defense to a stranger to the agreement. See Zwaska v. Irwin, 52 N. J.Super. 27, 144 A.2d 554 (Super.Ct. 1958); McCue v. Deppert, 21 N.J.Super. 591, 91 A.2d 503, 505 (Super.Ct.1952); Louis Kamm, Inc. v. Flink, 113 N.J.L. 582, 175 A. 62, 68 (Ct. of Er. & Ap. 1934). Plaintiff and Hawthorne had an oral agreement which they would have reduced to writing but for the wrongful act of the defendant. The defendant cannot now rely on a circumstance which it brought about to shield itself from liability. See McCue v. Deppert, *supra*, 91 A.2d at 505–506.

The fundamental question posed by this case is whether a tenant has a cause of action against its landlord for lost profits, as opposed to out-of-pocket losses, arising out of the landlord's breach of a covenant not to unreasonably withhold its consent to a subletting permitted by the lease agreement. The defendant argues that no such affirmative right of action exists but rather the law permits recovery limited to a set-off in a landlord's action for rent under the main lease. It argues that lost profits were not within the contemplation of the parties to the lease at the time it was entered into and are not, therefore, recoverable.

■ A threshold question is whether the landlord's consent clause constitutes an affirmative covenant by the landlord, or is merely a qualification of the tenant's covenant not to sublet without consent. If the provision be viewed as the landlord's covenant, breach of the covenant may render the lessor liable for damages. On the other hand, if it is merely a qualification of the tenant's covenant not to sublet, breach by the lessor will operate only to relieve the tenant of its covenant and give rise to a right to seek a declaratory judgment of the reasonableness of withholding consent. The problem of the proper construction to be placed upon a landlord's consent to subletting provision like that involved in the case at bar has been a vexatious one, with different jurisdictions adopting conflicting views. See generally, Annotation, 54 A.L.R.3d 679; 49 Am.Jur.2d, Landlord and Tenant § 499.

■■ Applying New Jersey law,[2] it would appear that the landlord's consent clause should be construed as an affirmative covenant by the landlord, the breach of which gives rise to a cause of action for damages.

In Broad & Branford Place Corp. v. J. J. Hockenjos Co., 132 N.J.L. 229, 39 A. 2d 80 (1944), the court held:

> There is a covenant in the words "which consent shall not be unreasonably withheld." The phrase is not merely restrictive of the character and nature of the tenant's covenant, i. e. that it was not to operate at all if the

---

1. The statute applies to leases and has been held not to apply to oral contracts to enter into written leases. Cooper v. Aiello, 93 N. J.L. 336, 107 A. 473 (Sup.Ct.1919).

2. At trial, defendant strenuously argued New Jersey law applied, an argument which plaintiff opposed. The Court requested post-trial briefs which both parties submitted. However, the plaintiff briefed New Jersey law, while the defendant briefed New York law. The Court does not deem both parties to consent to the application of either New York or New Jersey law. Nevertheless, the Court is of the view that it should apply New Jersey law. The property in question is located there and the lease provides that New Jersey law will govern.

assent of the landlord be arbitrarily withheld. A peremptory duty was thereby laid upon the landlord to act when his consent was invoked, and to be governed therein by the standard of reason. That was his undertaking by language not fairly susceptible of the contrary interpretation; and he is liable in covenant for a breach thereof.

39 A.2d at 84.

Thus, the sublet clause, Paragraph 14, imposed an affirmative duty upon the landlord. The breach of this covenant renders defendant liable in damages. *See also,* Cohen v. Wozniak, 16 N.J. Super. 510, 85 A.2d 9 (Super.Ct.1951).

The arbitrator found that defendant had breached the lease covenant in refusing its consent to the Hawthorne subletting. The only question, then, is what is the proper measure of damages.

■ Under New Jersey law, a lease is a written contract like any other written contract. The measure of damages upon breach of a lease covenant is the same as that applied to other kinds of contract breaches. Tanella v. Rettagliata, 120 N.J.Super. 400, 294 A.2d 431 (Dist.Ct. 1972) ; Cohen v. Wozniak, *supra.*

" '[T]he *prima facie* measure of damages for the breach of a contract is the *quantum* of loss consequent thereon. . . .' "

subject to the qualification that

" 'damages shall be those arising naturally, *i. e.,* according to the usual course of things, from the breach of the contract, or such as may fairly and reasonably be supposed to have been in the contemplation of the parties to the contract at the time it was made, as the probable result of the breach; . . .' " Cohen v. Wozniak, *supra,* 85 A.2d at 10–11.

■ It need not be determined whether the original parties to the 1965 lease actually intended that the lessee would sublet for profit. Actual foresight of the specific injury of a particular amount in money is not required.

"What is required is merely that the injury actually suffered must be one of a kind that the defendant had reason to foresee and of an amount that is not beyond the bounds of reasonable prediction. The rule does not require that anything should have been foreseeable to a dead certainty; seldom can anything be predicted with such assurance as that. It is merely that the injury that occurs must be one of such a kind and amount as a prudent man would have realized to be a probable result of his breach."

5 Corbin, On Contracts § 1012, at 88 (1951).

Applying these principles to the case at bar, the measure of damages is the difference between the reasonable rental at the time and place of breach, $1.10 per square foot, and the rental obtained by plaintiff in mitigation of its damages, $1.00 per square foot, or, put another way, the profits lost on the sublease with Hawthorne. It can fairly and reasonably be supposed that this sort of damage was in the contemplation of the parties at the time they entered into the lease agreement. The clause concerned the lessee's right to sublet all or part of the leased premises. Thus, it can not be disputed that collateral agreements, *i. e.,* subleases, were in the contemplation of the parties at the time of contracting. As the landlord's consent was a condition precedent to creation of a valid sublease, it was clearly foreseeable that the landlord's breach of its covenant to consent would result in the loss to the tenant of the sublease and the benefits to be derived therefrom. Thus, injury of the kind suffered by the plaintiff was a natural, foreseeable and probable consequence of defendant's breach of the sublet covenant. The amount of injury was, also, within the bounds of prediction of a reasonably prudent man as a probable result of the breach. This can be seen by reference to the terms of the lease. The lessee was given the right to sublet any part of the premises for any part of the lease's term. Thus, sublease agreements at rentals which were not

necessarily related to the rental reserved under the main lease should have been foreseen. They might have included profits to the lessee, to cite one example, for the use of its machinery. Additionally, the lease was for a long term and the parties were well aware that it was entered into in a period of inflation. That the parties anticipated a rise in the market value of the rented space can be seen in the provision they made for escalation in reserved rent during the term of the lease. For the first five years the lessee was to pay $20,400.00 rent annually, for the second five years annual rent was to increase to $22,100.-00 and for the third five years there was to be a further increase to $23,800.-00. In short, it was predictable that any sublease might be at a rental greater than the reserved rent under the main lease. That is, the lessee might profit from a sublease. Therefore, lost profits were foreseeable and are recoverable.

 In addition to the rental lost on the Hawthorne sublet agreement, plaintiff seeks to recover in this action expenses it incurred in the seven months which elapsed before a new subtenant was found. These expenses include electric bills, telephone bills, maintenance costs, advertising costs and the like. However, at trial, the only evidence introduced to prove these items was a written list of expenses and charges prepared by plaintiff's president for purposes of this litigation. No bills or cancelled checks were introduced. The Court finds that plaintiff failed to prove these additional alleged expenditures by a preponderance of the evidence. They, therefore, cannot be recovered.

It remains only to compute the damages to be awarded plaintiff. Plaintiff claims entitlement to the whole of the difference between the total rental to be received from Rempac up to the expiration of the lease on October 31, 1980 and what would have been received from Hawthorne, or $49,999.92. Defendant argues, however, that rental payments which plaintiff would have received in the future should be discounted to reflect their present value. On this point, the Court agrees with defendant. When a judgment on a contract for the payment of money includes sums to be payable in installments in the future and not yet due, the present value of the contract is less than the aggregate amount of the installments. The aggregate amount must be discounted to reflect the present worth of installments payable in the future. Hollwedel v. Duffy-Mott Co., Inc., 238 A.D. 468, 264 N. Y.S. 745 (4th Dep't 1933); Baer v. Durham Duplex Razor Co., 228 A.D. 350, 239 N.Y.S. 473 (1st Dep't), aff'd, 254 N.Y. 570, 173 N.E. 870 (1930).[3] As with the computation of interest the discount should be computed pursuant to the law of the forum. The discount rate should be equivalent to the prevailing New York interest rate, or 6%. N.Y.C. P.L.R. § 5004 (McKinney's Supp.1974).

The annual rent received from Rempac is $33,600. Plaintiff would have received a 10% higher rental from Hawthorne. Thus, the annual loss of rent is $3,360.00. The total rent lost for the six years from November, 1974 to the expiration of the lease, properly discounted, is $16,531.20. The rent plaintiff would have received from Hawthorne from November, 1972 through October, 1974, less what it received from Rempac, is $26,320.00. Accordingly, plaintiff's total damages are $42,851.20.

The foregoing constitutes the findings of fact and conclusions of law of this Court for the purposes of Rule 52, Fed. R.Civ.P.

Settle judgment on notice.

---

3. It has long been the rule in the federal courts, in cases involving federal law, that an award for future lost benefits should be discounted to their present value. See Chesapeake & Ohio Ry. Co. v. Kelly, 241 U. S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916); Yodice v. Koninklijke Nederlandsche Stoomboot Maatschappij, 443 F.2d 76 (2d Cir. 1971). Federal courts, sitting in diversity cases, have applied state law on discounting. See, e.g., Pierce v. New York Central R. Co., 409 F.2d 1392 (6th Cir. 1969).