153 N.J. Super. 294 (1977)
379 A.2d 508
RINGWOOD ASSOCIATES, LTD., A NEW JERSEY LIMITED PARTNERSHIP, PLAINTIFF,
v.
JACK'S OF ROUTE 23, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided September 15, 1977.
*298 Mr. Richard L. Zucker for plaintiff (Messers. Lasser, Lasser, Sarokin & Hochman, attorneys).
Mr. Lawrence D. Katz for defendant (Messers. Scangarella & Feeney, attorneys).
MARTIN, J.S.C.
This is a suit by plaintiff landlord, against defendant, a commercial tenant, for rent and other miscellaneous items, such as utility charges, increases, real estate taxes and snow removal assessments, which plaintiff alleges are due and owing as a result of defendant wrongfully vacating the premises and defaulting on the lease. Defendant asserts that plaintiff unreasonably withheld consent to an assignment of the lease, raises as a defense plaintiff's *299 failure to mitigate damages, and counterclaims for the return of its security deposit.
Defendant, which operates a men's and boy's retail clothing store, entered into a ten-year lease with the previous owner, Ringwood Plaza, Inc., the leasehold to commence on April 1, 1970. The leased premises, designated as Store No. 10, was located in a "strip"-type, neighborhood shopping center in Ringwood, New Jersey. The shopping center consisted of about 15 stores, with tenants engaged in various small business enterprises. On December 31, 1975 the present owner, Ringwood Associates, purchased the property with an assignment of all existing leases and now brings suit as a successor in interest.
With about five years remaining on the lease, defendant, having determined that the store was too small for its expanding business, decided to move to a larger location in another shopping center across the street. In January 1975, Louis Vento, secretary of defendant corporation, advised the lessor, through counsel, that defendant, pursuant to paragraph five of the lease, wished to assign the lease or sublet the premises to Comtap, Inc., which sells and repairs televisions and other appliances.
Paragraph five of the lease states:
That tenant shall not assign this agreement, or underlet or underlease the premises, or any part thereof, or occupy, or permit or suffer the same to be occupied for any business or purpose deemed disreputable or extra hazardous on account of fire, under penalty of damages and forfeiture, without the consent of the landlord, which consent shall not be unreasonably withheld.
Having received no response from the lessor after several requests, Vento, along with Joseph Leto, president of Comtap, directly contacted Dr. Harold Linn, a substantial stockholder in the lessor corporation, concerning the assignment of the lease to Comtap. On several occasions both Vento and Leto informed Dr. Linn that Comtap was willing to take an assignment of the lease or enter into a new leasing *300 arrangement directly with the lessor under the same terms and conditions contained in the lease with defendant. Further, Dr. Linn was advised that defendant was willing to guarantee performance of all tenant covenants contained in the lease.
Dr. Linn did not request information concerning the financial condition of Comtap, nor did he find that the proposed tenant was unacceptable to the lessor. Rather, he informed Vento that the lessor would not consent to a tripartite assignment arrangement, but would be willing to enter into an entirely new leasing agreement directly with Comtap at an increased rent. This proposal was rejected by Leto. Thereafter, Dr. Linn directly negotiated with Leto, who again rejected the lessor's consistent demand for an increased rent within the context of a direct rental by Comtap. It should be noted that the original lease provided for periodic increases in rent.
Defendant, having advised the lessor, through its attorney, that it considered the withholding of consent to be unreasonable and a breach of paragraph five of the lease, vacated the premises in March 1975, the last rental being paid through April 1975. It appears that from April until December 1975, when the shopping center was sold to plaintiff Ringwood Associates, Ringwood Plaza, Inc. made no effort to obtain a new tenant. Upon acquiring the property, plaintiff did not contact defendant. However, within 2 1/2 months a new tenant for the store was secured, although he did not commence paying rent until June 18, 1976. As a successor in interest, plaintiff is suing for rent and other miscellaneous charges for the entire period from May 1, 1975 to June 18, 1976.
In Broad & Branford Place Corp. v. J.J. Hockenjos Co., 132 N.J.L. 229 (Sup. Ct. 1944), the court considered the effect of a lease provision which provided that the lessor's consent to an assignment or subletting would not be unreasonably withheld. It was found that:
*301 The essential question here is whether a landlord's refusal to sanction the subletting of the demised premises and the use thereof for a purpose not authorized by the lease was "unreasonable", and therefore a breach of covenants obliging the tenant to devote the premises to a particular use and not to sublet or underlet them, without the landlord's consent. [at 230]
Thus, even though the lease in issue specifically stated that the premises were to be used for a men's and boy's clothing store, the lessor, under paragraph five of the lease, was still required to consider the suitability of a proposed tenant who was engaged in a different business, and further, had to have a reasonable basis for rejecting the proposed tenant.
In determining whether a landlord has acted reasonably in refusing consent, the court in Broad & Branford Place Corp., supra, stated:
Arbitrary considerations of personal taste, sensibility or convenience do not constitute the criteria of the landlord's duty under an agreement such as this. Personal satisfaction is not the sole determining factor. Mere whim or caprice, however honest the judgment, will not suffice. Gerisch v. Herold, 82 N.J.L. 605; Whitcomb v. Brant, 76 [N.J.L.] Id. 201; Id. [76 N.J.L.] 246; Vide Williston on Contracts (rev. ed), § 675A. And compare, also, Muller v. Beck, 94 N.J.L. 312. The standard is the action of a reasonable man in the landlord's position. What would a reasonable man do in like circumstances? The term "reasonable" is relative and not readily definable. As here used, it connotes action according to the dictates of reason  such as is just, fair and suitable in the circumstance. [at 232]
A landlord acts in an arbitrary manner when his decision to refuse an assignment is made without fair, solid and substantial cause or reason. Grossman v. Barney, 359 S.W.2d 475 (Tex. Civ. App. 1962). The tenant has the burden of proving that the landlord's conduct was arbitrary and unreasonable. Broad & Branford Place Corp. v. J.J. Hockenjos Co., supra.
Whether the lessee-assignor is willing to guarantee payment of rent and the performance of all other tenant covenants under the lease is a substantial factor to be considered *302 in determining the reasonableness of the lessor's refusal of consent. Johnson v. Jaquith, 189 So.2d 827 (Fla. App. 1966); Adams, Harkness & Hill Inc. v. Northeast Realty Corp., 361 Mass. 552, 281 N.E.2d 262 (Sup. 1972); Grossman v. Barney, supra. The financial solvency of the proposed tenant, the nature of his business, its suitability for the premises and general business area, the necessity of altering the premises to suit the assignee's business, are additional factors to be considered. See Johnson v. Jaquith, supra; Adams, Harkness & Hill, Inc. v. Northeast Realty Corp., supra; Roundup Tavern Inc. v. Pardini, 68 Wash.2d 513, 413 P.2d 820 (Sup. Ct. 1966); Broad & Branford Place Corp. v. J.J. Hockenjos Co., supra; Time Inc. v. Tager, 46 Misc.2d 658, 260 N.Y.S.2d 413 (N.Y. City Ct. 1965); Grossman & Barney, supra.
Although the burden is on defendant lessee vis a vis financial stability, the cases which have considered the proposed tenant's financial condition involved situations where the lessor requested such information as a condition precedent to his consent to the assignment. Johnson v. Jaquith and Adams, Harkness & Hill, Inc. v. Northeast Realty Corp., supra.
The court finds that defendant unequivocally stated to the lessor, Ringwood Plaza, that it would guarantee performance of all tenant covenants under the lease  not just the payment of rent. The lessor apparently did not question the solvency of the proposed tenant, for both Vento and Leto testified that Dr. Linn never requested information concerning its financial condition. Although neither plaintiff nor defendant raised the point at trial, it appears that no alterations to the premises were necessary in order to convert it from a clothing store to an appliance store. Both witnesses for defendant testified that the lessor did not object to the nature of Comtap's business. Rather, from Dr. Linn's direct negotiations with Leto and his statements to both parties, the court concludes that the lessor was perfectly willing to accept Comtap as a tenant under a new, direct *303 leasing arrangement, but would not allow Comtap to occupy the premises as assignee under the defendant's lease. The fact that the lessor could obtain a higher rent under a new lease agreement but not under an assignment of defendant's lease did not justify the lessor's refusal to consent to the assignment where the proposed tenant was acceptable and the existing lease already provided for periodic increases in rent.
In Krieger v. Helmsley-Spear, Inc., 62 N.J. 423 (1973), the sole objection made by the landlord was that the proposed subtenant was then a tenant in another building owned by the landlord, so that if he consented to the subletting it would create a vacancy in the other building. In holding the landlord's refusal of consent to be unreasonable, the court stated (at 424) that "the clause is for the protection of the landlord in its ownership and operation of the particular property  not for its general economic protection". (Emphasis supplied.)
The lessor did not object to Comtap's proposed tenancy on the basis that it would be detrimental to the lessor's interests in the operation of the shopping center. It appears, rather, that lessor's sole reason for refusing to consent to the assignment was the desire to improve its economic condition through its proffered direct rental of the premises to Comtap under a new lease at a higher rent. On these facts, the lessor acted unreasonably in refusing to consent to the assignment.
In New Jersey the provision that the lessor will not unreasonably withhold consent to an assignment is considered an affirmative covenant by the lessor which imposes liability on him for a breach of this obligation. Broad & Branford Place Corp. v. J.J. Hockenjos Co., supra; Passaic Distributors, Inc. v. Sherman Company, 386 F. Supp. 647 (S.D.N.Y. 1974). Having determined that plaintiff's predecessor in interest breached this obligation, the court must now determine whether vacating the premises and terminating performance was a remedy available to defendant.
*304 Plaintiff asserts that defendant was limited to the following remedies: (1) obtaining specific performance through an appropriate order in equity directing the lessor to consent, Krieger v. Helmsley-Spear, Inc., supra; (2) suing for damages for breach of the covenant, 601 West 26 Corp. v. John Wiley and Sons, Inc., 32 A.D.2d 522, 298 N.Y.S.2d 1018 (App. Div. 1969); (3) assigning the lease without the consent of the landlord, Butterick Pub. Co. v. Fulton & Elm Leasing Co., 132 Misc. 366, 229 N.Y.S. 86 (Sup. Ct. 1928).
In 601 West 26 Corp. v. John Wiley and Sons, Inc., supra, and Rock County Savings and Trust Co. v. Yosts, Inc., 36 Wis.2d 360, 153 N.W.2d 594 (Sup. Ct. 1967), the courts stated that the lessor's breach of the covenant not to unreasonably withhold its consent to an assignment does not justify an abandonment of the premises and termination of the payment of rent. However, in Riggs v. Murdock, 10 Ariz. App. 248, 458 P.2d 115 (App. 1969), a third case cited by plaintiff, the following language indicates that the court would have considered termination of the lease an appropriate remedy if it had found that the refusal of consent was unreasonable:
Nor does the fact that plaintiff refused to accept a subtenant of Mr. Kelly's evidence an interference by the landlord justifying cancellation of the lease. The lease itself provided that subtenants were subject to the reasonable approval of the plaintiff. The reasons given by the plaintiff for this refusal to sublet appears to us to be reasonable. [at 119; emphasis supplied]
Defendant has cited the case of Adams, Harkness & Hill Inc. v. Northeast Realty Corp., supra which held that the unreasonable withholding of consent by the lessor justifies the lessee's vacating of the premises and terminating its performance under the lease.
The judge's ruling was also correct that, after the date of Northeast's unreasonable refusal to accept Mann as subtenant, Harkness was relieved from any further obligation to pay rent for the entire remaining period of the lease. Papanastos v. Helley, 227 Mass. 74, *305 76, 116 N.E. 732; Hall, Landlord and Tenant (Adams and Wadsworth's 4th ed.) § 66. [281 N.E.2d at 265]
In view of these conflicting decisions this court determines the better reasoned view is found in the statement in Rock County Savings & Trust Company v. Yosts, Inc., supra, at page 596, that:
There is a dispute among the authorities where language in a lease to the effect a lessor will not unreasonably withhold its consent to an assignment or subletting by the lessee is a promise of the lessor, the breach of which may give rise to damages or be the basis for the termination of the lease, * * * [153 N.W.2d at 596, emphasis supplied]
This question being one of first impression in this State, the court is free to determine which approach it will follow.
A lease is both contractual and proprietory in nature in that it simultaneously constitutes a transfer of an estate in land and an agreement creating mutual obligation by the lessor and lessee. However, leases have traditionally been characterized as being predominately conveyances of interest in property, and therefore property law has generally prevailed over contract law. As a result, the consequences of the lessor's failure to perform his obligations under the agreement have not normally followed principles of contract law for breach of covenant. Except where the lessor actively or constructively evicted the lessee, once the estate vested in the lessee, his duty to pay rent for the full term of the estate was absolute as the purchase price for his property interest. Consequently, lease covenants, unless expressly made dependent, have been considered independent. From the standpoint of conveyances, then, if the lease does not contain a termination clause, the lessor's failure to perform any of his obligations under the agreement does not justify the lessee's abandonment of his estate and termination of rental payments, except where the lessor's nonperformance interferes with the lessee's peaceful use and enjoyment of his leasehold interest. The lessee is usually limited to an action *306 for damages for breach of a covenant. Under principles of property law, therefore, a defendant has no right to terminate the lease and vacate the premises upon the lessor's breach of his obligation not to unreasonably withhold consent to an assignment. However, under generally accepted principles of contract law, if there is a substantial breach of a material, mutually dependent covenant in a bilateral contract, the injured party is excused from further performance. 1 American Law of Property, § 3.11 at 202 (1952); 2 Powell on Real Property, § 221(1) at 179; 2 Powell on Real Property, § 231 at 278(3) (a); 1 American Law of Property, § 3.94 at 380; 1 Tiffany on Real Property, § 153 at 247; 3A Thompson on Real Property, § 1325 at 556; 6 Williston on Contracts, § 890 at 585-589.
The question of the propriety of defendant's remedial action depends on whether this court applies principles of property or contract law. In recent years the trend in New Jersey, especially in the area of residential leases, has been to apply contract principles which do not comport with the historical notion of a lease as an estate for years. Most recently, in Sommer v. Kridel, 74 N.J. 446 (1977), our Supreme Court held that, under principles of contract law, a lessor does have an obligation to make reasonable efforts to mitigate damages when a lessee has defaulted by vacating the premises. Long-established precedent to the contrary was overruled by the court primarily for two reasons. First it was noted that
* * "the distinction between a lease for ordinary residential purposes and an ordinary contract can no longer be considered viable. As Professor Powell observed, evolving "social factors have exerted increasing influence on the law of estates for years". 2 Powell on Real Property (1977 ed.), § 221[1] at 180-81. The result has been that
[t]he complexities of city life, and the proliferated problems of modern society in general, have created new problems for lessors and lessees and these have been commonly handled by specific clauses in leases. This growth in the number and detail of specific lease covenants has reintroduced into the law of estates *307 for years a predominately contractual ingredient. [Id. at 181]
Thus, in 6 Williston on Contracts (3 ed. 1962), § 890A at 592, it is stated:
There is clearly discernible tendency on the part of courts to cast aside technicalities in the interpretation of leases and to concentrate their attention, as in the case of other contracts, on the intention of the parties, * * *.
See also Javins v. First National Realty Corp., 138 U.S. App. D.C. 369, 373, 428 F.2d 1071, 1075 (D.C. Cir.1970), cert. den. 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970) ("the trend toward treating leases as contracts is wise and well considered") [Further citations omitted; at 454]
Secondly, the court in Sommer stated that
Application of the contract rule requiring mitigation of damages to a residential lease may be justified as a matter of basic fairness. Professor Mc Cormick first commented upon the inequity under the majority rule when he predicted in 1925 that eventually
the logic, inescapable according to the standards of a "jurisprudence of conceptions" which permits the landlord to stand idly by the vacant, abandoned premises and treat them as the property of the tenant and recover full rent, will yield to the more realistic notions of social advantage which in other fields of the law have forbidden a recovery for damages which the plaintiff by reasonable efforts could have avoided. [Mc Cormick, "The Rights of the Landlord Upon Abandonment of the Premises by the Tenant," 23 Mich. L. Rev. 211, 221-22 (1925)].
Various courts have adopted this position. See Annot., supra, § 7 (a) at 565 and ante at 305. [at 456]
The court in Sommer (at 456, note 4) specifically limited its decision to residential leases, this being the only question presented. However, this court finds that, for the same reasons expressed in Sommer, the requirement of mitigation of damages should apply to the type of commercial lease exemplified by the present case. Under the terms of this lease defendant, as with a residential lessee, the bar had right to possession and use of the premises as is, for a limited length of time. Although the lease was for ten years, with two five-year options, this is a relatively short period of time for a commercial lease when compared with the fairly common commercial practice of leases for 50 years and more  *308 the functional equivalent of a transfer of a fee. Moreover, the leased premises is located in a shopping complex which is similar to an apartment building in that it consists of approximately 15 units which, except for variations in size, are identical in construction and design and are used for basically the same purpose, i.e., retail sales. This is not the situation where the lessor makes extensive alterations in the building, or constructs and/or designs an entire building to suit the unique business needs of the particular lessee. Nor is it a situation where the tenant has an option to purchase the premises at the end of the leasehold, with accrued rental payments being credited towards the purchase price. In sum, defendant was not granted that degree of dominion and control over the premises  that quantum of an estate  which is conveyed in many other types of commercial leases. Therefore, the court concludes that, as with residential leases, the agreement did not primarily constitute a transfer of an estate in land.[1]
Rather, due to the problems and complexities of conducting business in a modern suburban area, the parties entered into an extensive and complex agreement of 34 paragraphs, containing numerous detailed and specific lease covenants on the part of both parties, which deal with every conceivable problem that could arise during the course of the tenancy, thereby giving the agreement a predominately contractual ingredient. From the nature of the agreement and the type of estate conveyed, it is reasonable to conclude that the parties considered the agreement as being basically contractual and intended that it be governed by generally accepted principles of contract law. Consequently, this court finds that the rule requiring mitigation of damages should apply to the present situation.
*309 Basic fairness and equity dictates this result just as it does in residential leases. The rationale contained in the excerpt from Mc Cormick, "The Rights of the Landlord Upon Abandonment of the Premises by the Tenant," as quoted in Sommer, supra, at 456 is equally applicable to commercial leases. Where a lessee has defaulted, it is contrary to public policy  to the financial and economic well-being of the community  to allow a lessor to leave a commercial premises vacant during the remaining term when, through reasonable efforts, he could rent the premises to an appropriate business and maintain a level of commercial activity in the community.
The pre-existing rule cannot be predicated upon the possibility that a landlord may lose the opportunity to rent another empty apartment because he must first rent the apartment vacated by the defaulting tenant. Even where the breach occurs in a multi-dwelling building, each apartment may have unique qualities which make it attractive to certain individuals. Significantly, in Sommer v. Kridel, there was a specific request to rent the apartment vacated by the defendant; there is no reason to believe that absent this vacancy the landlord could have succeeded in renting a different apartment to this individual. [Sommer, supra, at 456]
This rationale is equally  if not more applicable in the present case where the unique qualities of a particular store, especially its location within the shopping center, will affect its attractiveness for a particular tenant's business.
Under New Jersey law a lease is like any other written contract. When either party fails to perform a covenant, the injured party may bring an action for damages for breach of covenant. The measure of damages is governed by the same principles of contract law applicable to all other kinds of contract breaches. Passaic Distributors Inc. v. Sherman Company, supra; Cohen v. Wozniak, 16 N.J. Super. 510 (Ch. Div. 1951); Tanella v. Rettagliata, 120 N.J. Super. 400 (Cty. Ct. 1972).
Logic and reason dictate that the law be consistent. The above citations establish that contract law is applicable in the area of damages for breach of a lease covenant. *310 This court has determined that the agreement under consideration is primarily contractual in nature and, consequently, that the contract principle of mitigation of damages is applicable. It would be inconsistent and illogical for this court to hold that other principles of contract law, relating to remedies for breach of performance, should not apply when there is a breach of a lease covenant by either party. In addition to the need for consistency, equity and fairness dictate such a result. When a party to a lease agreement has breached his obligation to render a certain performance which is a substantial benefit for which the other party has bargained and given consideration, it would be inequitable to require the other party to continue his performance under the lease contract and hope for an adequate judicial remedy in the future. In a commercial setting, where a businessman must make contingency plans in order to protect himself against the unpredictable vacillations of business, both good and bad, the ability to assign a lease is a valuable right for which he bargains and gives consideration. Therefore, this court finds that defendant's actions in vacating the premises and terminating rental payments was an appropriate remedy in view of the lessor's breach of his obligation not to unreasonably withhold consent to an assignment.
The purpose of contractual remedies is to place the injured party in the same position as if the breaching party had fully performed his obligations under the contract.
The court finds inadequate the remedies to which plaintiff asserts the defendant was limited. In all practicality it is unreasonable to believe that a lessee could find an assignee who would be willing to take an assignment of the lease without the lessor's prior consent. In an action for damages it would be impossible to calculate with any degree of accuracy the profits and other benefits which the lessee had lost and would continue to lose in the future as a result of his inability to move his expanding business to a larger location *311 at the opportune time. The same problem of computing damages would have arisen if defendant had decided to postpone the relocation of its business while going through the lengthy process of obtaining an order for specific performance in Chancery. The only other alternative available to defendant would have been to relocate and continue paying rent at the old location until an order for specific performance and reimbursement of rent could be obtained. However, considering the pressing and continuing financial obligations of an ongoing small business, the financial burden of paying double rent for any length of time would have caused a severe blow to its economic well being from which it might not recover in the future. In view of the economics of the present situation, an order at some future date for specific performance and return of rentals paid after the lessor's wrongful withholding of consent to an assignment would be an inadequate remedy.
Plaintiff brought this action as an assignee of its predecessor in title, Ringwood Associates. It is established law that an assignee may not claim a position stronger than the one his assignor could assert.
The rights of an assignee can rise no higher than those of his assignor. All defenses available against Atwill [assignor] at the time of the assignment are available against his assignee, Abeles. Brooklawn v. Brooklawn Housing Corp., 129 N.J.L. 77, 79 (E & A 1942); Restatement, Contracts, Sec. 167 (1). [Abeles v. Adams Engineering Co., Inc., 64 N.J. Super. 167, 187 (App. Div. 1960) mod. 35 N.J. 411 (1961)]
Having found that plaintiff's assignor unreasonably withheld its consent to an assignment of the lease and that defendant acted within its rights in vacating the premises and terminating rental payments after this breach of covenant, the court dismisses plaintiff's complaint.
Defendant's counterclaim for return of its security deposit is granted due to plaintiff's failure to present evidence that defendant did not leave the premises "in good order or condition".
NOTES
[1] Other examples of commercial lease provisions or considerations exemplifying an agreement to transfer a fee, or a contract for non-transferability of the lease, are readily identified and might require a different analysis.